IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID S. YARNALL,                              )<br>                                                                  )<br>        Plaintiff,                                    )<br>                                                                  )   CONSOLIDATED<br>vs.                                                              )   Civ. No. 05-527-SLR<br>                                                                  )   Civ. No. 06-501-SLR<br>CORPORAL ANTHONY MENDEZ,          )   Civ. No. 06-520-SLR<br>DELAWARE STATE POLICE TROOP 7,  )<br>PTLM LOWE and PFC BUCHERT,         )<br>MILLSBORO POLICE DEPARTMENT,   )<br>                                                                  )<br>        Defendants.                              ) | |

**STATE DEFENDANTS' RESPONSES TO**
**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33(b) of the Federal Rules of Civil Procedure, the Department of Justice, on behalf of defendants Corporal Anthony Mendez and Delaware State Police (together, "the State Defendants"), respond to plaintiff's first set of interrogatories.

**RESPONSES**

**Interrogatory No. 1:** How long has Mendez been a State Trooper of the State Police of Delaware?

**Answer:**     Since November 11, 1993.

**Interrogatory No. 2:** What are your duties?

**Answer:**     Mendez is currently assigned to the Collision Reconstruction Unit at Troop 7 in Lewes, Delaware.  At the time of plaintiff's arrest on July 11, 2005, Mendez was assigned to patrol at Troop 7.

**Interrogatory No. 3:** Has Cpl Mendez ever had a complaint against him?

**Answer:** Objection. The term "complaint" is not defined.

**Interrogatory No. 4:** How long did Cpl Mendez spend in Police Academy?

**Answer:** Together with the rest of the 62nd Recruit Class, from November 1993 to March 1994.

**Interrogatory No. 5:** Why didn't Mendez search me after he handcuffed me and place me in the car knowing from three witnesses that I was out of control before arrest?

**Answer:** Mendez was running a criminal history background check on plaintiff when he tried to escape.

**Interrogatory No. 6:** Has Mendez ever been under investigation by Internal Affairs of the Delaware State Police before this incident?

**Answer:** No.

**Interrogatory No. 7:** Why didn't Mendez use pepper spray?

**Answer:** Use of pepper spray was not an option because of the close proximity between plaintiff and Mendez.

**Interrogatory No. 8:** Did Mendez even have a can of pepper spray on the night of May 11th 2005?

**Answer:** Yes.

**Interrogatory No. 9:** Did Mendez have a tazer gun on his person on May 11th 2005?

**Answer:** No. The Delaware State Police do not issue or deploy tazer guns.

**Interrogatory No. 10:** Mendez, what was your intention and reason for whacking me on the head; to know me unconscious or to kill me?

**Answer:** Neither. Mendez was trying to take plaintiff into custody while he was resisting arrest and to protect himself from physical danger by being dragged into a heavily-trafficked street.

**Interrogatory No. 11:** Mendez, because the second blow to my head caused the flashlight to zing to the ground, how many times would you have kept chopping away?

**Answer:** It was not necessary for Mendez to continue to use his flashlight as force to subdue plaintiff because at that point plaintiff stopped resisting arrest (for the moment).

**Interrogatory No. 12:** Is it normal procedure to assault people under arrest in Delaware?

**Answer:** No, and Mendez denies that he assaulted plaintiff while plaintiff was resisting arrest. Mendez used the appropriate degree of force commensurate with the situation.

**Interrogatory No. 13:** Has Mendez assaulted other suspects?

**Answer:** No, and Mendez denies that he assaulted plaintiff. *See* Answer to Interrogatory No. 12.

**Interrogatory No. 14:** Does Mendez know that 8th Amendment of the Constitution?

**Answer:** Yes. The Eighth Amendment's prohibition against cruel and unusual punishment only applies when a person is already in custody, not to the amount of force permitted to arrest and take a person into custody, which is governed by the Fourth Amendment.

**Interrogatory No. 15:** Who were the officers already on the scene, but stayed away from us 1 ½ minutes before Ptlm Lowe attacked me with a tazer gun and you kept cutting your eyes, watching him running towards us?

**Answer:** Mendez does not understand this question.

**Interrogatory No. 16:** Mendez, did you order PC2 to put his hand in my right front pocket and pull something out and place it on the hood near my Oakley sunglasses?

**Answer:** Mendez does not understand this question.

**Interrogatory No. 17:** Mendez, you being a Corporal, why couldn't you take me to the ground while I was handcuffed?

**Answer:** Plaintiff was already on the ground when Mendez handcuffed him, and after that plaintiff tried several times to flee.

**Interrogatory No. 18:** Why did you allow PC2 and PC3 to handle the "maglite" passing it around off and to the police already on the scene?

**Answer:** While Mendez was trying to subdue plaintiff, one of the civilian witnesses in the area picked up Mendez' flashlight.

**Interrogatory No. 19:** Why did you leave PC3 (older fellow, sweatshirt, the guy that picked up my Oakleys) out of your police report?

**Answer:** One civilian witness did not leave his name and Mendez was unable to re-connect with him before writing up his police report.

**Interrogatory No. 20:** Clearly, you saw PC3 walking all around us didn't you?

**Answer:** Mendez was aware of several civilian witnesses in the area at the time of plaintiff's arrest.

**Interrogatory No. 21:** Why did you, Mendez, allow Ptlm Lowe of Millsboro Police Dept to continually harass me, threaten me, tazer me and hit me in the back of the neck when I already had a head injury?

**Answer:** Mendez does not believe that any member of the Millsboro Police Department used unnecessary or excessive force to help try to take plaintiff into custody and, in any event, Mendez does not have any operational authority over the conduct of officers from another police department and did not have a realistic opportunity to prevent their actions.

**Interrogatory No. 22:** Why didn't anybody flex cuff my feet to begin with?

**Answer:**     When Mendez initially handcuffed plaintiff, he was not kicking.

**Interrogatory No. 23:**     Why didn't you and the other police finally hurry up and flexicuff my feet as the ambulance was pulling into Grotto's?

**Answer:**     It was not necessary because plaintiff was already securely in custody.

**Interrogatory No. 24:**     Mendez, on page 5 of police report, you advised Suscom that you had me in custody, on the ground, and in front of your police vehicle, why is it stated in "State Defendants Answer to the Complaint" that you, Mendez, struck plaintiff twice on the head with a flashlight in self defense and using a reasonable amount of force under the circumstances to take plaintiff into custody and my back was facing you and handcuffed?

**Answer:**     Mendez momentarily had plaintiff in custody before he tried to flee and began resisting arrest.

**Interrogatory No. 25:**     Why, Mendez, did you leave out the incident of my getting hit on the head in Exhibit A and Exhibit B from the Justice of the Peace Court No. 3 dated 2005 May 12, 5:10 am in Sussex County?

**Answer:** It was not relevant to the issue of probable cause that Mendez has to use a reasonable amount of force to take plaintiff into custody because he was resisting arrest and endangering the physical safety of police officers.

Respectfully submitted,

/s/ W. Michael Tupman, Esquire
W. Michael Tupman, Esquire
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE  19904
(302) 739-7641

Attorney for Corporal Anthony Mendez
and Delaware State Police

Dated: December 6, 2006

I:\TUPMAN\FILES\yarnall.response.interr.wpd