# MEDICAL RECORDS
# FILED UNDER SEAL

Adult Complaint and Warrant
# In the Justice of the Peace Court
In and for the
## State of Delaware

State of Delaware vs.  **DAVID S. YARNALL**

I, CPL/2 MENDEZ (3862) of Troop 7 State Police, do hereby state under oath or affirmation, to the best of my knowledge, information and belief that the above-named accused violated the laws of the State of Delaware by committing criminal acts in Sussex county on or about the date, or dates, and at or about the location, or locations, as indicated in Exhibit A hereto attached and made a part hereof.

Wherefore, your affiant prays that the above-named accused may be forthwith approached and held to answer this complaint consisting of **4** charges, and to be further dealt with as the law directs.

X _____
Affiant

Sworn to and subscribed to before me this 12th day of May AD, 2005.

_____
Judge/Commissioner/Court Official

(To be completed by the Judge/Commissioner/Court Official)

A. _____ The crime was committed by a child.
B. _____ A misdemeanor was committed against a child.
C. _____ A misdemeanor was committed by one family member against another family member.
D. _____ Other: Explain _____

## Warrant

To any constable or other authorized person:

Whereas, the foregoing complaint consisting of **4** charges, having been made, as listed in Exhibit A which is attached hereto and incorporated herein, and having determined that said complaint has been properly sworn to and having found that there exists probable cause for the issuance of process, based upon the affidavit of probable cause which is attached hereto and incorporated herein as Exhibit B, you are hereby commanded in the name of the State of Delaware, to take **DAVID S. YARNALL** accused, and bring same before

## Justice of the Peace Court 03, FORTHWITH, to answer said charges

GIVEN UNDER MY HAND, this _____ day of _____, AD _____

_____
Judge/Commissioner/Court Official

Executed on _____ by _____

Case Number: **05 05 008426**  Warrant Number:  **07 05 000584**  Arrest Number:

State of Delaware vs. **DAVID S. YARNALL**                    Case Number:   05 05 008426

## Exhibit A

Charge Sequence: 001        Police Complaint Number: 07 05 019417  Arrest Number: 001190AWS
Charge: **Attempted Carjacking Second Degree Take Possession of Vehicle from Another Immediate Presence**
In Violation of 11 Del.C. § 0531 0001 F E
Location: Open field next to Grotto's Long Neck - Millsboro, 19966
TO WIT: DAVID S YARNALL, on or about the 11th day of MAY, 2005, in the County of SUSSEX,
State of Delaware, did knowingly and unlawfully take possession of a motor vehicle in the immediate
presence of ERICA  DONOHUE by duress of ERICA  DONOHUE. By ATTEMPTINGTO OPEN THE
DOOR OF A VEHICLE OWNED BY ERICA DONOHUE WHILE SHE WAS INSIDE IN ORDER
TO TAKE POSSESSION OF THE VEHICLE. which acts under the circumstances as HE believed them
to be constituted a substantial step in a course of conduct planned to culminate in the commission of the
crime of Carjacking Second Degree Take Possession of Vehicle from Another Immediate Presence in

Charge Sequence: 002        Police Complaint Number: 07 05 019417  Arrest Number: 001190AWS
Charge: **Attempted Carjacking Second Degree Take Possession of Vehicle from Another Immediate Presence**
In Violation of 11 Del.C. § 0531 0001 F E
Location: Open field next to Grotto's Long Neck - Millsboro, 19966
TO WIT: DAVID S YARNALL, on or about the 11th day of MAY, 2005, in the County of SUSSEX,
State of Delaware, did knowingly and unlawfully take possession of a motor vehicle in the immediate
presence of CONRAD  DAVENPORT by duress of CONRAD  DAVENPORT. By PUPOSELY
LEAVING A BICYCLE IN THE ROADWAY IN ORDER TO GET A VEHICLE TO STOP, D1
JUMPED ON THE HOOD AND ATTEMPTED TO GET THE DRIVER TO EXIT THE VEHICLE SO
HE COULD TAKE POSSESSION. which acts under the circumstances as HE believed them to be
constituted asubstantial step in a course of conduct planned to culminate in the commission of the crime

Charge Sequence: 003        Police Complaint Number: 07 05 019417  Arrest Number: 001190AWS
Charge: **Criminal Mischief  Under $1000 Damage Property**
In Violation of 11 Del.C. § 0811 00A1 M
Location: Open field next to Grotto's Long Neck - Millsboro, 19966
TO WIT: DAVID S YARNALL, on or about the 11th day of MAY, 2005, in the County of SUSSEX,
State of Delaware, did intentionally cause damage of less than $1000.00 to property consisting of
Automobiles belonging to CONRAD  DAVENPORT.

Charge Sequence: 004        Police Complaint Number: 07 05 019417  Arrest Number: 001190AWS
Charge: **Resisting Arrest**
In Violation of 11 Del.C. § 1257 0000 M A
Location: Open field next to Grotto's Long Neck - Millsboro, 19966
TO WIT: DAVID S YARNALL, on or about the 11th day of MAY, 2005, in the County of SUSSEX,
State of Delaware, did intentionally attempt to prevent ANTHONY MENDEZ of the Troop 7 State
Police from effecting an arrest of himself, by CONTINUOUSLY ATTEMPTING TO RUNAWAY
FROM THIS OFFICER AFTER ALREADY BEING HANDCUFFED..

State of Delaware vs. **DAVID S. YARNALL**                    Case Number:  05 05 008426

## **Exhibit B**

Also Known As:
Date of Birth/Age: ▮▮▮▮/1969 (37)              Sex: **Male**              Race: **White**
Eye Color: **Hazel**         Hair Color: **Brown**       Height:  **5'11"**    Weight:  **165 lbs**
Driver's License:        Social Security Number: ▮▮▮▮▮▮▮▮

Address: ▮▮▮▮▮▮▮▮▮
          **GEORGETOWN, DE 19947**
Phone:

Employer: **UNK - POSSIBLY A PAINTER**

Date and Times of Offense: **Between 05/11/2005 at 2130 and 05/11/2005 2230**
Location of Offense: **Open field next to Grotto's Long Neck - Millsboro, 19966**

Your affiant CPL/2 MENDEZ can truly state that: See Victim Interviews below

INTERVIEW VICTIM 1 (Davenport, Conrad)

V1 was initially contacted in the parking lot of Uncle Willie's Convenience Store, located at the intersection of
Long Neck Rd. & Bank's Rd. Through my intial contact, V1 advised the following. At approx 2130hrs V1 was
operating a 1995 Eagle Talon east on School Lane (CR298) approaching Long Neck Rd. He was closely behind
an unknown white mini-van. Suddenly the mini-van slammed on it's brakes and swerved to the right, apparently
to miss something in the roadway. When the vehicle swerved to the right, V1 could see that there was a blue
mountain style bicycle laying in the middle of the road with no one around it. The mini-van kept going resulting
in V1 being positioned right upon the disabled bicycle. As soon as V1 came to a complete stop, an unknown
shirtless white male with light colored pants came out of the woods. (This subject will now be referred to as D1.)
V1 did not recognize this subject, but was able to advise that he had two tattoos on his left & right chest.
Suddenly, D1 jumped on the hood of his car and began violently beating the windshield with a belt (dents &
scratches observed). V1 became very scared at this subjects behavior and was unsure what to do. D1 then jumped
off the hood and came over to the driver's door and reached as though he was going to open the door. D1 then
yelled for V1 to 'MOVE'. At this time, V1 felt as though D1 wanted him to move from the driver's seat so he
could steal his car. V1 then quickly accelerated around the subject and went to the lighted parking lot of Uncle
Willie's and called the police. Lastly, I asked V1 what he felt D1's intentions were, and he said, 'He wanted to
steal my car'. V1 was not injured in this incident, but his vehicle suffered a scratch to the windshield and a dent to
front portion of the hood. Approx damage was $100.00.

INTERVIEW V2 (Donohue, Erica)
V2 was interviewed in the parking lot of Uncle Willie's Convenience Store after the completion of V1's interview.
For the record, V1 & V2 are unfamiliar with one another.
V2 stated that at approx 2130hrs she was operating her 2002 Kia Optima west on School lane in the area of the
County Bank. V2 then observed a friend of hers walking in a western direction on the opposite side of the
roadway. V2 stopped in the roadway and asked her friend if she needed a ride. When this friend walked over to
driver's side of V2's vehicle, D1 came from the wooded area and walked around the back of the vehicle towards
the drivers door. This scared the friend, who then alerted V2 to the fact that D1 was approaching. Suddenly, D1
reached to open up the rear passenger door, but V2 quickly pushed down the locking mechanism and sped away.

_____
Affiant
Sworn to and subscribed to before me this 12th day of May AD, 2005.

_____
Judge/Commissioner/Court Official

State of Delaware vs. **DAVID S. YARNALL**                    Case Number:  05 05 008426

V2 was unable to give a detailed description, but did state that he was a white male, shirtless with tattoos. V2 called 911 and reported same to the dispatch center. V2 was not injured during this incident, and her vehicle did not suffer any damage.

INTERVIEW PC1(Stress, Tricia)
PC1 is the girlfriend of D1. I was able to determine this because I recovered D1's cellular telephone from the sce ne and her number was on there twice as a missed call. I called her at approx 2330hrs and determined the following. PC1 stated that she has been dating D1 for about 2 months. She knew him as a painter who had recently came to Delaware from North Carolina. When she first met him, he was temporarily residing at the Sea Esta Hotel. She became his girlfriend and allowed him to move into her residence at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. According to PC1, she last saw D1 on today's date at 2100hrs at a friend of hers in Enchanted Acres MHP. PC1 stated that he was acting weird, but thought he was just drunk. She started to speak with him, and he became very emotional. D1 then stated that he had to get back to his dad's home in North Carolina......RIGHT NOW. PC1 tried to reason with him by telling him she would take him to North Carolina in June. D1 began acting more emotional and stated that he wanted PC1's car. She refused to allow him her car and D1 started saying, "I've got to get a car, I've got to get a car"! D1 then left the residence, possibly on his bicycle, which she described as a blue mountain style bicycle. PC1 was unfamiliar with where D1 went to after he left the residence.

INVESTIGATIVE ACTION
On 051105 at 2137hrs I was dispatched to the parking lot of Uncle Willies on Long Neck Rd. to investigate a disorderly subject complaint. Upon arrival, I contacted & interviewed V1 reference the facts of the complaint. While interviewing him, W1 came over to where I was speaking with V1 and made me aware of another incident that had just occurred which was determined to be a related matter. I quickly left Uncle Willies so I could attempt to locate this subject before he got too far away.

As I traveled south on Long Neck Rd, I could see a subject walking on the right shoulder in a southern direction. As I got closer, I could see that the subject was shirtless and was wearing light colored pants. I pulled in behind the subject, and identified myself. When this subject turned around, I observed tattoos on his left and right chest. I ordered this subject to the ground and he did so. I then told him to put his hands behind his back and allow me to cuff him, which he did. At this time, I began to perform a wanted check. This subject advised that his name was David S. Yarnall(D1) and his DOB was ▮▮▮▮▮. I also advised SUSOM that I had the subject in custody, on the ground, and in front of my police vehicle.

When I started to go back to the police car, D1 started to get up and onto his feet. D1 was able to get back onto his feet before I could get back over to him. I immediately advised SUSCOM that D1 was resisting and that I needed assistance. When I reached D1, he was starting to walk away from from my police car towards Long neck Rd. When I reached D1, I put hands on him and asked him to get back on the ground, which he refused to do. D1 then started to quickly walk away from me, and I latched onto his left arm with my right arm.

_____
Affiant
Sworn to and subscribed to before me this 12th day of May AD, 2005.

_____
Judge/Commissioner/Court Official

State of Delaware vs. **DAVID S. YARNALL**                    Case Number:   05 05 008426

Once I was able to grab D1's arm, I attempted to put him in an arm bar and restrain him up against the passenger side of my patrol vehicle. D1 continued to pull away and was actually moving both of us towards Long Neck Rd. As I struggled with D1, I tried to get my right foot infront of his and trip him face first onto the ground. D1 seemed extrememly strong and continued to keep his leg out just far enough that I was unable to trip him forwards or backwards. After assistance from Millsboro PD and addition State Officers, we were able to control him.

**\*\*D1 admitted to being under the influence of PCP during incident.\*\*\***

While still pinned up against the car, I could hear sirens approaching. Moments later, 2 Millsboro Police officers arrived and applied the Tazer device upon D1. I released D1 after the tazer shock and fell forward and to the ground. Moments later D1 got back up onto his feet and started running towards  while I was still trying to keep him the took the subject to the ground. In doing so, they used a Tazer device to control his behavior. D1 then got back up to his feet

Affiant: CPL/2 MENDEZ (3862) of Troop 7 State Police

| Victims: | Date of Birth | Relationship Victim to Defendant |
|---|---|---|
| CONRAD DAVENPORT | ▇▇▇/1988 | Stranger |
| ERICA DONOHUE | ▇▇▇/1983 | Stranger |

_____
Affiant
Sworn to and subscribed to before me this 12th day of May AD, 2005.

_____
Judge/Commissioner/Court Official

State of Delaware vs. **DAVID S. YARNALL**                    Case Number:  05 05 008426

## Exhibit B

SOCIETY/PUBLIC                                        Victimless Crime

_____
                                     Affiant
Sworn to and subscribed to before me this 12th day of May AD, 2005.

_____
                        Judge/Commissioner/Court Official

State of Delaware vs. **DAVID S. YARNALL**                    Case Number:   05 05 008426

## Approval and Arrest Information

Approved by: **100905 : HAGAN HERMAN G.**

Approved on: **05/12/2005 at 05:52 AM**

Approval Entered by: **CJPBBEC : BETH P BECK**


Active Arrest Number: **001190AWS**

Date of Arrest: **05/12/2005 at 22:00**

Arresting Agency: **Troop 7 State Police**

Arresting Officer: **CPL/2 MENDEZ**



**Delaware State Police**
Internal Affairs Division
P.O. Box 430
Dover, Delaware 19903

August 31, 2005

Mr. David Yarnell
C/O Botetourt County Jail
P.O Box 370
Fincastle Va 24090-0370

Dear Mr. Yarnell:

This letter is in response to the complaint you lodged against Corporal Anthony Mendez of the Delaware State Police for Excessive Force.

The Internal Affairs Division has completed the investigation of your allegation and the result has been reviewed with the Administrative Staff.

Your allegation against Corporal Anthony Mendez has been ruled as Exonerated. There will be no further action taken by this office.

Any questions concerning this matter may be directed to me at 302-739-5990.

Sincerely,

Lieutenant Mark Daniels
Internal Affairs Division
Delaware State Police

Form-7



# DELAWARE STATE POLICE
## DETENTION RESISTANCE REPORT

Troop: __7__  Date: __05/11/2005__ Day: __WE__  Time: __2137__  Complaint #: __07-05-019417__

Subject's Name: __YARNALL, DAVID, S__
Subject Arrested: __YES__  Charges: __Criminal__

Race: __W__  Sex: __M__  EO: __NH__  DOB: ~~██/██~~/1969 Age: __35__  Ht: __511__  Wt: __165__
Address 1: ~~████████████████████~~
Address 2: _____
City: __Charlotte_____  State: __NC__ Zip Code: __28277__

Location of Incident: __Long Neck Rd next to Grotto Pizza__

Subject's Initial Demeanor:  Calm___  Hostile___  Threatening___
Assaulting___  Verbal __X__  Physical __X__  Weapons___  Unconscious___

Subject Impaired:  Not Impaired___  Alcohol___  PCP __X__  Cocaine __X__
                   Unknown Substance___  Other __X__  (Explain in narrative)

Reporting Officer: __CPL/2 ANTHONY    MENDEZ, #3862__
Race: __W__  Sex: __M__  Ethnic: __H__  Age: __35__  Height __511__  Weight __200__

1st Assisting Officer: __CPL/1 RYAN J MITCHELL, #3965__
Race: __W__  Sex: __M__  Ethnic: __N__  Age: __30__  Height __601__  Weight __205__

2nd Assisting Officer: __CPL STEPHEN J KELLY, #3227__
Race: __W__  Sex: __M__  Ethnic: __NH__  Age: __30__  Height __602__  Weight __220__

1st Witnessing Officer: __TFC JEFFERY D BALLINGER, #3402__
Race: __W__  Sex: __M__  Ethnic: __NH__  Age: __29__  Height __511__  Weight __160__

2nd Witnessing Officer: _____ __N/A__ _____
Race: ____  Sex: ____  Ethnic: ____  Age: ____  Height ____  Weight ____

*Number indicates the order in which each type was used by each officer.

| Type Used | Fists/Hands | Baton | Handgun | Shotgun | K9 | OC Spray | Chem.Agent | Other |
|---|---|---|---|---|---|---|---|---|
| Reporting Officer: | 1 | — | — | — | — | — | — | 2 |
| 1st Assisting Officer: | 1 | — | — | — | — | — | — | — |
| 2nd Assisting Officer: | — | — | — | — | — | — | — | 1 |

Reporting Officer's Signature: *Cpl/2 A. Mendez #862*
Date: __05/11/05__

On-duty Supervisor: __CPL./3 SMYK, 3697__
Time Notified: __2230__
Comments: (Mandatory) ____ *see attached* _____

_____

_____

Your signature indicates that you have read each report submitted
by the officers involved in this incident.

Supervisor's Signature: *Cpl Steve Smyk #697* Date: __5-11-05__

Form 396, Revised 1/97                                    Page 1

# DELAWARE STATE POLICE
# DETENTION RESISTANCE REPORT

Complaint #07-05-019417

INJURIES:

<u>Subject's Injuries:</u>

| Part of Body: | Bruises | Abrasions | Cuts | Fractures | Other |
|---|---|---|---|---|---|
| | _____ | shoulders | right scalp | _____ | _____ |
| | _____ | back | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ | _____ |

Medical Attention:
Hospital: **BEEBE HOSPITAL**    Physician: **DR.DOBBERT** _____    T&R **X**    T&A ____

<u>Reporting Officer's Injuries:</u>    **None**

| Part of Body: | Bruises | Abrasions | Cuts | Fractures | Other |
|---|---|---|---|---|---|
| | _____ | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ | _____ |

Medical Attention:
Hospital: _____    Physician: _____    T&R ____    T&A ____

<u>1st Assisting Officer's Injuries:</u>    **None**

| Part of Body: | Bruises | Abrasions | Cuts | Fractures | Other |
|---|---|---|---|---|---|
| | _____ | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ | _____ |

Medical Attention:
Hospital: _____    Physician: _____    T&R ____    T&A ____

<u>2nd Assisting Officer's Injuries:</u>    **None**

| Part of Body: | Bruises | Abrasions | Cuts | Fractures | Other |
|---|---|---|---|---|---|
| | _____ | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ | _____ |

Medical Attention:
Hospital: _____    Physician: _____    T&R ____    T&A ____

<u>NARRATIVE:</u>  Each of the officers listed above (reporting, assisting, witnessing) must complete a narrative. All of these narratives must be attached to this report prior to review by the first-line supervisor. Each officer should use a supplement report format for this narrative.

Reviewer:
Print Name: _Lt. Roger A. Willey #2184_

Signature: _Lt. Roger A. Willey #2184_

Troop Commander:
Print Name: _Captain Gregory S. Noct_

Signature: _Captain Gregory S. Noct_

*Note:  The Reviewer and Troop Commander/Section Chief should attach their comments (mandatory) to this report.*

Page 2

Supervisory Comments
Detention and Resistance Report # 07-05-19417


I have reviewed the actions of Cpl Mendez and viewed the MVR tape for the incident. I find that CPl Mendez used the only force that he had the opportunity to and that his actions were within the Divisional Guidelines. I am concerned with the use of the Tazer by another Police Department. After review of the incident with Cpl Mendez, I determined that due to the strength of the defendant due to his PCP use, Cpl Mendez felt that a strike to the head was his only option as the defendant responded to no other stimulus and Cpl Mendez was being drug toward the street.

On Duty Supervisor: _____    Date: 5-12-05
                    Cpl Smyk, S.

# DELAWARE STATE POLICE
## DETENTION RESISTANCE REPORT
## TROOP COMMANDER'S COMMENTS

COMPLAINT # 07-05-19417
SUBJECT'S NAME: Yarnell, David S.
REPORTING OFFICER: Cpl. 2 Anthony Mendez
ASSISTING OFFICERS: Cpl. Ryan Mitchell
                              Cpl. Stephen Kelly
                              Tfc. Jeffrey Ballinger

I have reviewed all the reports, and MVR Tape of the incident. After review of each of these items, it is clear that all the Delaware State Police Officers acted within Divisional Policy as well as the Rules and Regulations. Corporal Mendez did an excellent job when he secured a very combative and unruly defendant that appeared to be high on an unknown substance. However, there were several areas of concerns that were identified through this review and they are discussed below.

The use of the flashlight against the defendant to gain compliance, an unattended combative defendant permitted to be seated outside a police vehicle while a wanted check is conducted, the initial deployment of the Taser by Millsboro Police and the lack of anyone taking charge of the incident once the defendant was secured.

Cpl. Mendez was justified when he used his flashlight in an attempt to gain compliance from the defendant as the defendant attempted to drag him towards the road. Had Corporal Mendez not used his flashlight there was an excellent chance that either Corporal Mendez or the defendant could have been more seriously injured.

Even though Cpl. Mendez did an excellent job when he initially handcuffed the defendant, Cpl. Mendez's decision to place the defendant on the ground in front of his police vehicle, while he completed a data check, gave the defendant the opportunity to escape. It was during this time, that the defendant got to his feet and attempted flee. This forced Corporal Mendez to once again subdue a combative defendant and hold him on the hood of his police vehicle until assistance arrived. Had proper precaution been taken at that time the risks associated with unattended prisoner would have been minimized.

The use of the Taser by Millsboro Police Officers was unwarranted based on the review of the MVR. At the moment the Taser was used the defendant was not combative. There was no assessment of the situation or the needs of Corporal Mendez be either officer. As a result, the Taser was used without Cpl. Mendez's knowledge even though he was holding the defendant on the hood of his car. The use of the Taser forced Cpl. Mendez to relinquish control of the defendant and let him fall to the ground. This prompted the officer to again use the Taser despite the advice of the other Millsboro officer against its use. As a result, the defendant is able to get to his feet again, flee from the officers and

another deployment of the Taser is required in order to gain compliance from the defendant.

It is apparent that Cpl. Mendez did not expect the Millsboro officer to deploy the Taser at their initial contact with the defendant. At the time the defendant was secured and assistance was only needed to place the defendant in a vehicle. Had the proper questions been asked, prior to the deployment of the Taser, this would have known by the Millsboro officers and the situation might not have escalated.

As result of this Taser incident, it is becoming increasingly important for the Division to generate a policy that dictates the use of a Taser by outside agencies during an arrest by Delaware State Police.

The final training issue is the failure for an officer to take control of the scene once it was secured. It was evident that no Delaware State Police officer in charge of the scene. It was evident that someone needed to supervise the scene to better coordinate other officers, EMS and Private Security Personnel.

Each of the above training issues have been discussed with Sgt. Rodney Layfield the supervisor of the officers involved. Sgt. Layfield has also reviewed the MVR tape and will conduct shift level training to address future incidents that involve the deployment of the Taser. This training information will also be shared with other shifts at Troop 7.

Captain Gregory D. Nolt

Troop Commander
Troop 7

Delaware State Police
Detention Resistance Report

Complaint # 07-05-019417
Defendant: David S. Yarnall
Date: May 17, 2005

Reviewer's Comments:

After reviewing the report of investigation and the MVR tape of this incident,
several concerns arise. Cpl. Mendez was confronted with an unpredictable, physically
imposing suspect who had already demonstrated aggressive and violent actions toward
two motorists in two separate carjacking attempts. Additionally, it was later confirmed
that the Defendant was under the influence of cocaine, marijuana and PCP.

Fortunately, upon initial contact, the Defendant was cooperative enough that he allowed
Cpl. Mendez to handcuff him. Shortly afterward however, the Defendant attempted to
escape the control of Cpl. Mendez with the handcuffs on and this is when the physical
struggle ensued. Cpl. Mendez, in an attempt to subdue the suspect locked his left arm
under the suspects left arm in an attempt to force him to the ground. At this time, due to
the Defendant's strength and his drug induced state, Cpl. Mendez was unable to take
physical control of him. It was at this time that the Defendant began to move Cpl.
Mendez and himself toward a busy roadway. Fearing that the Defendant would place
them both in a position to be struck by a car, Cpl. Mendez can be heard frantically
shouting for the Defendant to stop or he would be forced to hit him with the flashlight.
Cpl. Mendez shouts a warning twice then strikes the Defendant in the head. When the
Defendant still fails to adhere to commands, he strikes the Defendant a second time. It
was at this time he was able to gain enough control of the Defendant in order to place him
over the hood of his police car.

Shortly afterward, two Millsboro police Department officers arrive on the scene
and without any direction from Cpl. Mendez or without provocation by the Defendant,
administer a contact shock with a taser. Cpl. Mendez loses contact with the Defendant at
this point and both fall onto the ground. At this time the Defendant sits up and one of the
Millsboro officers places the taser to the back of the Defendats neck and advises him that
he is going to shock him again if he doesn't get himself into a prone position. The
second Millsboro officer can be heard stating "don't do it". The crack of the taser is then
heard and the Defendant then gets up and begins to run away. Apparently at some point
the Millsboro officers shock the Defendant a second time and he is finally brought under
control until the paramedics arrived.

In conclusion, I believe Cpl. Mendez was justified in the use of a flashlight as an impact weapon, since it was a weapon of opportunity, the flashlight was already in his hand and Cpl. Mendez feared he was about to be dragged into a busy roadway by a Defendant who was under the influence of drugs and demonstrated superior strength. I do feel, however, that he should have chosen the neck, collar bone or shoulder as an intended first target instead of immediately striking him in the head. I also feel that Cpl. Mendez may benefit from some additional training in pressure point and control tactics as well as weaponless defense.

I also feel that the use of the taser in this incident by the Millsboro officers was completely unwarranted. Cpl. Mendez had gained sufficient control of the prisoner that he only needed some additional assistance in moving the Defendant from the hood of his patrol car to the rear seat of the car until EMS personnel arrived. I also believe that Cpl. Mendez and Cpl. Mitchell who arrived on the scene shortly after the first taser shock was administered, could have taken more effective control of the scene and Defendant, which would have prevented the foot pursuit and the need to administer the taser a second time. As a result, I feel some training at the shift level is necessary in order to anticipate possible situations that may occur involving the future deployment of the taser and determine the appropriate responses and protocols.

Lt. Roger A. Willey  #2184

Delaware State Police Detention Resistance Supplement
Complaint: 07-0519417
Trooper: Tfc. Jeffrey D. Ballinger

On 05/11/05 I responded to Cpl./2 Mendez's request for assistance with a subject resisting arrest. At the time Cpl./2 Mendez began to request assistance I had just left Troop 4. While en route to the Long Neck area I could clearly hear Cpl./2 Mendez request assistance for a subject he had handcuffed, however the subject was still attempting to resist and run from him. Having worked with Cpl./2 Mendez I am aware of his tone of voice in an emergency situation. When Cpl./2 Mendez was advising Suscom of the current situation it could easily be heard that he was physically struggling to maintain control of the subject. Shortly thereafter Cpl./2 Mendez requested that an ambulance respond to the scene due to head trauma to the subject. Cpl./2 Mendez for several minutes continued to request assistance and could clearly be heard that he was still having difficulty controlling the subject.

Upon my arrival at the scene, Long Neck Rd. in the area of Grotto's Pizza, I notice several marked patrol vehicles with the emergency lights on. At that time I could not see any subjects around the vehicles. I was then advised via radio that the officers and Troopers on scene were in front of the Grotto's Pizza in a grassy area. As I pulled my patrol vehicle up to the area of Grotto's Pizza I noticed one white male face down on the ground being held down by several Millsboro Police Officers, Cpl./2 Mendez and Cpl./1 Mitchell. As I exited my patrol vehicle the subject continued resisting and made an attempt to stand as he began pulling his legs towards his chest. At that time I assisted the other officers by holding the subjects right arm and right thigh area down to the ground. The subject continued to resist by attempting to lift his arms and legs in a violent manner. At that time I noticed the subject was bleeding heavily from the right side of his head and currently had two tazer gun leads in the center of his upper back area. Although I noticed the tazer leads in the subjects back, the subject was not tazered in my presents.

Shortly thereafter the ambulance and Sussex County Paramedic unit arrived at the scene. They attempted to provide treatment for the subject, however he continued to resist and pull away. The subject was then restrained at his feet by flexible handcuffs. The paramedic unit advised the officers at the scene that they wanted the subject secured face down to a flexible stretcher then placed on a full size mobile stretcher. The subject was then secured in the ambulance to be transported to Beebe Medical Center.

While in transit to Beebe Medical Center the subject continued to be disorderly and attempted to pull his feet and arms out of the restraints. The subject was unsuccessful and he was transported without incident. I remained at Beebe Medical Center for several hours with the subject while he received medical treatment. I then transported the subject to Troop 7 via my patrol vehicle and secured him to the detention bench without incident.

FORCE REPORT CONTINUATION
COMPLAINT #07-05-19417
CPL. STEPHEN KELLY 3227

ON 051105 AT APPROX 2137HRS I WAS AT TROOP-7 INVESTIGATING A THEFT
COMPLAINT WHEN I HEARD CPL. MENDEZ STRUGGLING WITH DEF.
YARNALL. I CLEARED TROOP-7 AND RESPONDED TO THE LONG NECK
GROTTOS USING LIGHTS AND SIRENS. I ARRIVED ON SCENE APPROX
SEVEN MINUTES LATER AND OBSERVED DEF LAYING FACE DOWN. CPL.
MENDEZ WAS RESTRAINING DEF'S FEET, CPL MITCHELL WAS
RESTRAINING DEF'S ARMS, PFC BUCHERT WAS ARMED WITH HIS TASER ON
DEF'S LEFT SIDE, TFC BALLINGER WAS ON DEF'S RIGHT AND PTLM LOWE
WAS RESTRAINING DEF'S HEAD.
I CONTACTED CPL MENDEZ AND INQUIRED IF HE WANTED ME TO TAKE
HIS POSITION AT DEF'S FEET. CPL MENDEZ ADVISED HE WAS OK AND
REQUESTED I SECURE DEF'S HEAD AND ALLOW PTLM LOWE TO GET FLEX
CUFFS. I WENT BACK TO DEF'S HEAD AND PLACED MY FOOT BETWEEN
DEF'S SHOULDER BLADES AT THE BASE OF HIS NECK AND APPLIED
PRESSURE TO PREVENT HIM FROM THRASHING HIS HEAD. DEF'S HEAD
AND FACE WAS EXTREMELY BLOODY AND DEF WAS STILL ACTIVELY
RESISTING. I REMAINED IN THIS POSITION UNTIL DEF WAS SEDATED BY
THE PARAMEDICS AND HE HAD CALMED DOWN. I ASSISTED WITH
GETTING DEF ON THE GURNEY, AND CLEARED THE SCENE. I RESPONDED
TO BEEBE ER REFERENCE ASSISTING THE ER STAFF WITH DEF. DEF WAS
NOT COMBATIVE AT BEEBE ER SO I CLEARED.

Cpl S. Kelly 3227

DELAWARE STATE POLICE DETENTION RESISTANCE REPORT
SUPPLEMENTAL COMPLAINT NUMBER 07-05-19417
CPL/1 RYAN J. MITCHELL #965

On Wednesday 051105 at approx 2137 hrs I was working the 1800-0600 shift at
Troop 7 in Lewes, De. At this time I was dispatched by Suscom to assist Cpl/2 Mendez
with a disorderly subject in the area of the Long Neck Elementary School located on Cr
298 approx 4 miles east of Millsboro. As I was enroute to the scene, in the area of Sr 24
and Cr 277, I overheard Cpl/1 Mendez requesting 10-24a (officer needs assistance).
After having worked with Cpl/2 Mendez for at least two years, I was able to clearly
determine by the tone of Cpl/2 Mendez's voice that he was in a stressful situation and he
was apparently actively struggling with someone, most likely the def. Suscom then
advised that Cpl/2 Mendez's current location was on the grassy area of Long Neck Rd in
front of Grotto's Pizza. At this point I then overheard that two Millsboro Police
Department units were also responding to the scene. Approx 6-7 minutes later I arrived
at the scene. As I was arriving, I approached the intersection of Long Neck Rd and Cr
298. I then observed the Millsboro Police Department unit proceeding s/b on Cr 22,
which put their approximate time of arrival thirty seconds before mine. As I arrived on
the scene I was not able to immediately observe what exactly was taking place due to
Cpl/2 Mendez's police vehicle and the Millsboro Police Department vehicle obstructing
my view. I then walked around both police vehicles and observed a white male subject
(now referred to as def) sitting handcuffed on the ground facing a northern direction. The
def also had a large amount of blood pouring down the right side of his face. At this time
I also observed one of the Millsboro officers in possession of a Taser gun. This officer
(now referred to as Officer Lowe) was giving verbal commands to the def or he (def)
would be struck with the Taser. I did not attempt to secure the def or restrain him at this
time due to the presence of the Taser. I was concerned that I too would be tased if I came
in contact with the def. At this time I recall that the def then regained his footing and
attempted to run in a north bound direction. As the def began to flee, Officer Lowe
deployed the Taser into the back area of the def. The def at this time screamed very
loudly in apparent discomfort, however as I recall he continued to flee on foot and
changed his direction of travel and began to run in a south bound direction towards the
Grotto's Pizza. Although the def was handcuffed, he seemed to be very quick and was
able to run approx 50 yards before he was apprehended by Officer Buchert of Millsboro
Pd. At this time the def was placed on the ground-face first. Once the def was placed on
the ground, I recall that I placed my knees in the def's back and leg area in an attempt to
prevent him from once again regaining footing and fleeing. At this time, Cpl Kelly and
Tpr Balllinger, both of DSP Troop 7 arrived at the scene. Cpl Kelly, Tfc Ballinger,
Officer Buchert, and Officer Lowe then remained in contact with the def. Although all of
the aforementioned officers were restraining then def, he was still attempting to regain his
footing and sceaming very loudly. We restrained the def for approx 6-7 minutes until the
Indian River Volunteer Fire Company ambulance arrived along with a Sussex County
Paramedic Unit. I along with the other officers assited in securing the def in a stretcher
and placing him in the ambulance. I then advised Tfc Ballinger to ride in the ambulance
with the def to Beebe Medical Center in case the def continued with his combative

Cpl/1 Ryan J. Mitchell #965
Complaint number 07-05-19417

behavior.  I followed the ambulance to Beebe Medical Center and remained there for
approx ten minutes.  The def was not combative in the emergency room so I cleared the
complaint.  There was no further action taken by this officer.

Cpl/1 Ryan J. Mitchell
#965

Force Report Continuation
Cpl./2 Anthony Mendez
Complaint# 07-05-19417

On 051105 at 2137hrs I was dispatched to the parking lot of Uncle Willies on Long Neck
Rd. to investigate a disorderly subject complaint. Upon arrival, I contacted &
interviewed V1 (Davenport, Conrad) and V2 (Donohue, Eric) reference the facts of the
complaint. During these interviews, I determined that V1 & V2 were the victim of an
attempted carjacking. The incident was committed by an unknown white male that
purposely placed a bicycle in the roadway in order to get unsuspecting motorists to stop.
Once a car would stop, he would exit a nearby wooded area and attempt to take control of
their vehicle. With V1, he jumped on the hood, and  began beating the windshield with
his belt before yelling at the operator to exit the vehicle. This attempt was unsuccessful,
so he accosted a second vehicle (V2) in the same area. With the second vehicle, he
attempted to open a car door, but V2 locked same before speeding away. The suspect was
described as a shirtless, brown haired white male with light colored pants and multiple
tattoos. While interviewing these victims, a third subject walked to our location to
describe another incident involving the same suspect. W1(Bender, Jason), the owner of a
nearby bar/lounge, advised that this same subject rode his bicycle into the bar, took a
drink from a customers beer before running south on Long Neck Rd, without his bicycle.

After completing these interviews, I responded south on Long Neck Rd in an attempt to
locate this suspect. In the area of Grotto Pizza, I could see a subject walking on the right
shoulder in a southern direction. As I got closer, I could see that the subject was shirtless
and was wearing light colored pants. I pulled in behind the subject, activated my
emergency lights, and identified myself. When this subject turned around, I observed
tattoos on his left and right chest. At this time, I ordered him to the ground and he
complied with only a disgusted verbal response. I then told him to put his hands behind
his back and allow me to cuff him, which he did.

At this time, I began to get his personal information so I could perform a wanted check.
He stated that his name was David S. Yarnall(D1) and his DOB was ▮▮▮▮▮. I also
advised SUSOM that I had the subject in custody, on the ground, and in front of my
police vehicle.

When I went back to the police car to run a data check, D1 started to get up onto his feet.
D1 was able to get back to his feet before I could gain control him. I immediately told
him to get back on the ground, which he refused. I advised SUSCOM that D1 was
resisting and that I needed assistance. When I reached D1, he was starting to walk away
from my police car towards Long Neck Rd. When I reached D1, I put hands on him and
asked him to get back on the ground, which he again refused to do. D1 then started to
quickly walk away from me towards Long Neck Rd. I then latched up and under his left
arm with my left arm in an attempt to arm bar him forward towards my police car.

Once I was able to grab D1's arm, I attempted to restrain him up against the passenger side of my patrol vehicle. D1 continued to pull away from me, and was actually dragging both of us towards Long Neck Rd. As I struggled with D1, I tried to get my right foot in front of his and trip him face first onto the ground. D1 seemed extremely strong and continued to keep his leg out just far enough that I was unable to trip him forwards or backwards. At this time I was in fear for both of our lives, as he seemed intent on reaching Long Neck Rd., which was heavily traveled. Throughout this entire incident, I yelled at D1, telling him to stop resisting

While continuously being pulled around by D1, I was evaluating what force options I could use to control him until back-up units arrived. My Use of Force options were very limited. OC spray was of no use, as I was in too close proximity to the defendants face. Also, reaching for the spray would have been impossible, as it was on my left side, which was where the defendant was situated. Furthermore, my ASP baton would have to be extended in order to be used, and the defendant was much too close.

At this point, the need to keep the defendant from reaching the roadway was paramount to our safety. If he would have been able to continue towards Long Neck Road, a passing car could have struck us both. Due to this condition, my only weapon available was my issued Mag Light, which was already in my right hand. At this point, I felt that if I did not try to disable D1, he would have carried both of us to Long neck Rd.

While continuing to struggle with the defendant, I yelled to him that I was going to strike him with my flashlight. I yelled this warning twice to no avail. While D1 continued moving around with me latched onto his left arm, I raised my division issued mag flashlight and struck D1 across the right side of his head. The first blow did not show an effect and he continued pulling us towards the roadway. I struck him a second time on the right side of his head causing a laceration. When I struck him the second time, I dropped my flashlight, which was quickly retrieved by a citizen who stopped to help. When D1 started bleeding, I quickly called SUSCOM and had them dispatch an ambulance even though he continued struggling.

After striking D1 with the flashlight, I was able to maneuver him to the right hood area of my patrol vehicle and from this point forward, the incident was captured on video (7SP-6345/Tape 7-218). Prior to, the incident was captured on audio only as we were out of the cameras view.

I continued to struggle with D1 and had to physically restrain him on the hood of my police vehicle. D1 would seem to calm momentarily before once again trying to raise up off the hood of my car. Every time D1 tried to raise up, I yelled for him to stay down. Even with my body weight pressed against D1, he attempted several times to lift and stand up, which was unsuccessful. This struggle went on for a approx 5 minutes before police back up arrived.

While pinned up against the car, I could hear sirens approaching. Moments later, 2 Millsboro Police officers arrived and applied the Tazer device upon D1. I released D1

after the tazer shock and he fell forward to the ground. Moments later D1 got back up onto his feet and started running away with the myself, Cpl./1 Mitchell and Millsboro chasing him. Millsboro attempted to tazer him once again while he was running, but they were unable to do so effectively. The defendant was caught in the area of the front of the Grotto Restaurant when at which time Millsboro Police shot the tazer device into the defendant's bare back. The defendant was shocked once again but continued trying to get back on his feet. Myself, the two Millsboro officers (Patrolman Buchert & Patrolman Lowe), Cpl./1 Mitchell and eventually Cpl. Kelly had to physically hold the defendant down. The entire time we restrained the defendant, he made statements that made no sense. He grunted, chanted, and spelled different words on advertisement signs that were within eyes view.

After approx 5-10 minutes of restraint, Sussex County Paramedics arrived and injected the defendant with a sedation drug. After several more minutes, we were able to get flex-cuffs on the defendant's feet before securing him in a slat style ambulance stretcher.

When the defendant arrived at Beebe Hospital, he had to be sedated twice more before they were able to treat him for an approx 1 inch laceration on his right scalp. He was given numerous stitches and was released. According to toxicology reports, the defendant was high on Cocaine, PCP & Marijuana. Lastly, D1 was wanted on two felony fugitive warrants out of Virginia for Burglary & theft.

Cpl/2 a Mendez

## Supplemental Report

| Original Occurrence Dates and Times: | | Grid | Sector |
|---|---|---|---|
| WED 05/11/2005 2130 thru WED 05/11/2005 2230 | | 196-092 | 72 |

**Original Location:**
Long Neck RD Open field next to Grotto's Long Neck    Millsboro, DE 19966
2 miles N of MASSEY'S LANDING
LONG NECK RD (CR22); 2 MILES N/O MASSEY'S LANDING

## Original Victim Information

| Victim Number 001 | Name DAVENPORT, CONRAD | | | | | |
|---|---|---|---|---|---|---|
| Type Individual | Sex Male | Race White | | Ethnic Origin Non-Hispanic | Age 17 | D.O.B. 1988 |

| Address | | | | |
|---|---|---|---|---|
| Millsboro, DE 199660000 | | Resident Status Full Time | Home Telephone | Cell Phone |

| Reporting Person? [X]Yes [ ]No | Victim Injured? [ ]Yes [X]No | Victim Deceased? [ ]Yes [X]No | Officer Comments |
|---|---|---|---|

## Original Suspect/Defendant Information

| Sequence 001 | Type Defendant | SBI Number 00548973 | Name YARNALL, DAVID S | | | | Nick Name | |
|---|---|---|---|---|---|---|---|---|
| Sex Male | Race White | Ethnic Origin Non-Hispanic | Age 35 | D.O.B. 1969 | Height 5' 11" | Weight 175 | Skin Tone | Eye Color Hazel |
| Hair Color Brown | Hair Length | Hair Style | Facial Hair | Voice Speech | Teeth | Build | Glasses |

| Address | | | |
|---|---|---|---|
| CHARLOTTE, NC 28277 | | Home Telephone (302) | Cell Phone |

| Arrest Number 001190AWS | Arrest Type Warrant | Suspect's Clothing Description |
|---|---|---|

| Employer/School UNK - POSSIBLY A PAINTER DE | Work Telephone |
|---|---|

## Original Crime and Associated Information

| Victim Number 001 | Crime Seq 001 | Statute DE:11:0835:000a:F:E | Crime Description Carjacking Second Degree Take Possession of Vehicle from Another Immediate Presence |
|---|---|---|---|

| Location Of Offense Highway/Roadway/Alley/Street | Status Adult Arrest 05/11/2005 | Involvement [ ]Alcohol [ ]Drugs [ ]Computer | General Offense ATPT - Attempt to Commit |
|---|---|---|---|

| Suspected Hate/Bias [ ]Yes [X]No - N/A | Crime Code 12243A - Robbery/Strong-Arm Street/Alley/Highway |
|---|---|

| Burglary Force Involved [ ]Yes [ ]No | Weapon/Force Used Personal WeaponsHands/Feet |
|---|---|

## Investigative Narrative

ON 051105 AT APPROX 2137HRS I WAS AT TROOP-7 INVESTIGATING A THEFT COMPLAINT WHEN I HEARD CPL. MENDEZ STRUGGLING WITH DEF. YARNALL. I CLEARED TROOP-7 AND RESPONDED TO THE LONG NECK GROTTOS USING LIGHTS AND SIRENS. I ARRIVED ON SCENE APPROX SEVEN MINUTES LATER AND OBSERVED DEF LAYING FACE DOWN. CPL. MENDEZ WAS RESTRAINING DEF'S FEET, CPL MITCHELL WAS RESTRAINING DEF'S ARMS, PFC BUCHERT WAS ARMED WITH HIS TASER ON DEF'S LEFT SIDE, TFC BALLINGER WAS ON DEF'S RIGHT AND PTLM LOWE WAS RESTRAINING DEF'S HEAD.


I CONTACTED CPL MENDEZ AND INQUIRED IF HE WANTED ME TO TAKE HIS POSITION AT DEF'S FEET. CPL MENDEZ ADVISED HE WAS OK AND REQUESTED I SECURE DEF'S HEAD AND ALLOW PTLM LOWE TO GET FLEX CUFFS. I WENT BACK TO DEF'S HEAD AND PLACED MY FOOT BETWEEN DEF'S SHOULDER BLADES AT THE BASE OF HIS NECK AND APPLIED PRESSURE TO PREVENT HIM FROM THRASHING HIS HEAD. DEF'S HEAD AND FACE WAS EXTREMELY BLOODY AND DEF WAS STILL ACTIVELY RESISTING. I REMAINED IN THIS POSITION UNTIL DEF WAS SEDATED BY THE PARAMEDICS AND HE HAD CALMED DOWN. I ASSISTED WITH GETTING DEF ON THE GURNEY, AND CLEARED THE SCENE. I RESPONDED TO BEEBE ER REFERENCE ASSISTING THE ER STAFF WITH DEF. DEF WAS NOT COMBATIVE AT BEEBE ER SO I CLEARED.

| Reporting Officer CPL KELLY - 32272 001 | Supervisor Approval RODNEY M LAYFIELD PSPT892 Date 05/17/2005 1705 | |
|---|---|---|
| Solvability Factors | [ ]Witness [ ]Suspect Located | [ ]M. O. [ ]Suspect Described | [ ]Trace Stolen Property [ ]Suspect Identified | [ ]Suspect Named [ ]Suspect Vehicle Described | Status Closed |

| Reported Date and Time | Stolen Vehicle Report | Occurred: |
|---|---|---|
| WED 05/11/2005 2137 | | WED 05/11/2005 2130 thru WED 05/11/2005 2230 |

**Location:**
Long Neck RD Open field next to Grotto's Long Neck    Millsboro, DE 19966
2 miles N of MASSEY'S LANDING
LONG NECK RD (CR22); 2 MILES N/O MASSEY'S LANDING

**M.O. and Incident Overview:**
D1 attempted to take control of two motor vehicles by coercion/duress. D1 then fought with officers who attempted to arrest him.  D1 was admittantly under the influence of PCP.

| Grid | Sector | County | Domestic Related? | 4-F-14 Sent? | Gen Broadcast Sent? |
|---|---|---|---|---|---|
| 196-092 | 72 | Sussex | ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☒No |

## Victim Information

| Victim Number | Name |
|---|---|
| 001 | DAVENPORT, CONRAD |

| Type | Sex | Race | Ethnic Origin | Age | D.O.B. |
|---|---|---|---|---|---|
| Individual | Male | White | Non-Hispanic | 17 | ▮▮1988 |

| Address | | Resident Status | Home Telephone | Cell Phone |
|---|---|---|---|---|
| ▮▮▮▮▮▮▮▮<br>Millsboro, DE 199660000 | | Full Time | (302) 945-3777 | |

| Reporting Person? | Victim Injured? | Victim Deceased? | Officer Comments |
|---|---|---|---|
| ☒Yes ☐No | ☐Yes ☒No | ☐Yes ☒No | |

| Injuries | Description of Injuries |
|---|---|
| | |

| Parent/Guardian Information | Parent Telephone | Parent Cell Phone |
|---|---|---|
| BETTINA M LANDIS<br>Same Address as Victim | | |

| Victim Number | Name |
|---|---|
| 002 | DONOHUE, ERICA |

| Type | Sex | Race | Ethnic Origin | Age | D.O.B. |
|---|---|---|---|---|---|
| Individual | Female | White | Non-Hispanic | 22 | ▮▮▮▮1983 |

| Address | | Resident Status | Home Telephone | Cell Phone |
|---|---|---|---|---|
| ▮▮▮▮▮▮▮▮<br>Millsboro, DE 199660000 | | Full Time | (302) 9▮▮▮▮▮ | |

| Reporting Person? | Victim Injured? | Victim Deceased? | Officer Comments |
|---|---|---|---|
| ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☒No | |

| Injuries | Description of Injuries |
|---|---|
| | |

| Employer/School | Work Telephone |
|---|---|
| THE DOGHOUSE<br>LONG NECK RD<br>Millsboro, DE 19966 | (302) ▮▮▮▮▮▮ |

| Victim Number | Name |
|---|---|
| 003 | |

| Type | Sex | Race | Ethnic Origin | Age | D.O.B. |
|---|---|---|---|---|---|
| Society/Public | | | | | |

| Address | | Resident Status | Home Telephone | Cell Phone |
|---|---|---|---|---|
| | | | | |

| Reporting Person? | Victim Injured? | Victim Deceased? | Officer Comments |
|---|---|---|---|
| ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☒No | |

| Injuries | Description of Injuries |
|---|---|
| | |

## Suspect/Defendant Information

| Sequence | Type | SBI Number | Name | Nick Name |
|---|---|---|---|---|
| 001 | Defendant | 00548973 | YARNALL, DAVID S | |

| Sex | Race | Ethnic Origin | Age | D.O.B. | Height | Weight | Skin Tone | Eye Color |
|---|---|---|---|---|---|---|---|---|
| Male | White | Non-Hispanic | 35 | ▮▮▮▮1969 | 5' 11" | 175 | | Hazel |

| Hair Color | Hair Length | Hair Style | Facial Hair | Voice Speech | Teeth | Build | Glasses |
|---|---|---|---|---|---|---|---|
| Brown | | | | | | | |

| Disguise | Disguise Color(s) | Resident Status | Unusual Characteristics | Armed With |
|---|---|---|---|---|
| | | Non Resident | | Unarmed |

| Address | | Home Telephone | Cell Phone |
|---|---|---|---|
| ▮▮▮▮▮▮▮▮ DR<br>CHARLOTTE, NC 28277 | | (302) 7▮▮▮▮▮ | |

| Arrest Number | Arrest Type | Suspect's Clothing Description |
|---|---|---|
| 001190AWS | Warrant | |

| Employer/School | Work Telephone |
|---|---|
| UNK - POSSIBLY A PAINTER<br>DE | |

## Crimes and Associated Information

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 001 | 001 | DE:11:0835:000a:F:E | Carjacking Second Degree Take Possession of Vehicle from Another Immediate Presence |

| Reporting Officer | Supervisor Approval |
|---|---|
| CPL/2 MENDEZ  - 3862 2 | STEPHEN T SMYK  PSPT697  Date 05/13/2005 0240 |

## Crimes and Associated Information

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Adult Arrest 05/11/2005 | ☐ Alcohol ☐ Drugs ☐ Computer | ATPT - Attempt to Commit |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 12243A - Robbery/Strong-Arm Street/Alley/Highway |

| Burglary Force Involved | Weapon/Force Used |
|---|---|
| ☐ Yes ☐ No | Personal WeaponsHands/Feet |

| Stolen Property | Property Category | Quantity | Unit Price | Stolen Value | Recovered Value | Recovery Date |
|---|---|---|---|---|---|---|
| | None | | | .00 | .00 | |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 001 | 004 | DE:11:0811:00A1:M: | Criminal Mischief  Under $1000 Damage Property |

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Adult Arrest 05/11/2005 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 2902 - Damage/Private Property |

| Burglary Force Involved |
|---|
| ☐ Yes ☐ No |

| Damaged Property | Property Category | Value |
|---|---|---|
| | Automobiles | 100.00 |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 002 | 002 | DE:11:0835:000a:F:E | Carjacking Second Degree Take Possession of Vehicle from Another Immediate Presence |

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Adult Arrest 05/11/2005 | ☐ Alcohol ☐ Drugs ☐ Computer | ATPT - Attempt to Commit |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 12243A - Robbery/Strong-Arm Street/Alley/Highway |

| Burglary Force Involved | Weapon/Force Used |
|---|---|
| ☐ Yes ☐ No | Personal WeaponsHands/Feet |

| Stolen Property | Property Category | Quantity | Unit Price | Stolen Value | Recovered Value | Recovery Date |
|---|---|---|---|---|---|---|
| | None | | | .00 | .00 | |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 003 | 003 | DE:11:1257:0000:M:A | Resisting Arrest |

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Adult Arrest 05/11/2005 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 4801 - Resisting Arrest |

| Burglary Force Involved |
|---|
| ☐ Yes ☐ No |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 003 | 005 | DE:11:2513:0000:M: | Fugitive from Another State |

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Prosecution Declined 05/11/2005 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 4902 - Flight to Avoid Prosecution/Out-of-State Fugitive |

| Burglary Force Involved |
|---|
| ☐ Yes ☐ No |

## Associated Property Summary

| Total Stolen Property | Total Recovered Property | Total Seized Property | Total Damaged Property |
|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $100.00 |

## Victim - Suspect/Defendant Relationships

| Victim - 001 | Suspect/Defendant - 001 | Victim Offender Relationship |
|---|---|---|
| DAVENPORT, CONRAD | YARNALL, DAVID S | Stranger |
| Victim - 002 | Suspect/Defendant - 001 | Victim Offender Relationship |
| DONOHUE, ERICA | YARNALL, DAVID S | Stranger |
| Victim - 003 | Suspect/Defendant - 001 | Victim Offender Relationship |
| Society/Public | YARNALL, DAVID S | Victimless Crime |

## Witness Information

| Sequence | Type | Name | Sex | Race | Age | D.O.B. |
|---|---|---|---|---|---|---|
| 001 | Witness | BENDER, JASON R | Male | White | 35 | ████1969 |

| Address | Home Telephone | Cell Phone |
|---|---|---|
| ███████████ Millsboro, DE 19966 | (302)█████████ | |

| Employer/School | Work Telephone |
|---|---|
| OWNER OF WHISKERS TAVERN | (302) 945-8771 |

| Sequence | Type | Name | Sex | Race | Age | D.O.B. |
|---|---|---|---|---|---|---|
| 002 | Person Contacted | KRAFT, JOHN | Male | White | 22 | ████1982 |

| Reporting Officer | Supervisor Approval |
|---|---|
| CPL/2 MENDEZ   - 3862 2 | STEPHEN T SMYK  PSPT697 Date 05/13/2005 0240 |

Case 1:05-cv-00527-SLR    Document 80    Filed 12/21/2006    Page 27 of 32

## Investigative Narrative

INTERVIEW VICTIM 1 (Davenport, Conrad)

V1 was initially contacted in the parking lot of Uncle Willie's Convenience Store, located at
the intersection of Long Neck Rd. & Bank's Rd. Through my initial contact, V1 advised the
following. At approx 2130hrs V1 was operating a 1995 Eagle Talon, Delaware registration
284635, east on School Lane (CR298) approaching Long Neck Rd. He was closely behind an unknown
white mini-van. Suddenly the mini-van slammed on it's brakes and swerved to the right,
apparently to miss something in the roadway. When the vehicle swerved to the right, V1 could
see that there was a blue mountain style bicycle laying in the middle of the road with no one
around it. The mini-van kept going resulting in V1 being positioned right upon the disabled
bicycle. As soon as V1 came to a complete stop, an unknown shirtless white male with light
colored pants came out of the woods. (This subject will now be referred to as D1.) V1 did not
recognize this subject, but was able to advise that he had two tattoos on his left & right
chest.

Suddenly, D1 jumped on the hood of his car and began violently beating the windshield with a
belt (dents & scratches observed). V1 became very scared at this subjects behavior and was
unsure what to do. D1 then jumped off the hood and came over to the driver's door and reached
as though he was going to open the door. D1 then yelled for V1 to 'MOVE'. At this time, V1
felt as though D1 wanted him to move from the driver's seat so he could steal his car. V1 then
quickly accelerated around the subject and went to the lighted parking lot of Uncle Willie's
and called the police. Lastly, I asked V1 what he felt D1's intentions were, and he said, 'He
wanted to steal my car'. V1 was not injured in this incident, but his vehicle suffered a
scratch to the windshield and a dent to front portion of the hood. Approx damage was $100.00.

INTERVIEW V2 (Donohue, Erica)

V2 was interviewed in the parking lot of Uncle Willie's Convenience Store after the completion
of V1's interview. For the record, V1 & V2 are unfamiliar with one another.

V2 stated that at approx 2130hrs she was operating her 2002 Kia Optima, Delaware registration
956848 west on School lane in the area of the County Bank. V2 then observed a friend of hers
walking in a western direction on the opposite side of the roadway. V2 stopped in the roadway
and asked her friend if she needed a ride. When this friend walked over to driver's side of
V2's vehicle, D1 came from the wooded area and walked around the back of the vehicle towards
the drivers door. This scared the friend, who then alerted V2 to the fact that D1 was
approaching. Suddenly, D1 reached to open up the rear passenger door, but V2 quickly pushed
down the locking mechanism and sped away. V2 was unable to give a detailed description, but
did state that he was a white male, shirtless with tattoos. V2 called 911 and reported same to
the dispatch center. V2 was not injured during this incident, and her vehicle did not suffer
any damage.

Case 1:05-cv-00527-SLR Document 80    Filed 12/21/2006    Page 28 of 32

Investigative Narrative - Continued

INTERVIEW D1(Yarnall, David S.) -


D1 was interviewed after waiving miranda at 0441hrs on 051205. The following is a synopsis of the interview. For full disclosure, listen to the actual audio tape. D1 stated that he was under the influence of PCP, Crack Cocaine and Marijuana. D1 stated that he was infact trying to get a car from V1 & V2 in order to go back to North Carolina. However, he wanted the occupants of the car to go with him, so he could show them what a wonderful life it is away from here. D1 stated that he ran away from police officers because he thought they were trying to kill him with the Tazer device. During this interview, D1 made many comments that were off the wall. Some of these comments had to do with the American Military and Osama Bin Laden. Others had to do with his family in North Carolina. I terminated the interview after several moments due to these types of comments. **The tape is currently in my possession at DSP-7.


INTERVIEW W1(Bender, Jason R.)


W1 is the part-owner of Whiskers Restaurant & Tavern located on Long Neck RD. W1 walked over to Uncle Willie's Store when he saw me interviewing the other victims. W1 stated that at approx 2140hrs, a shirtless white male with tattoos rode his blue bicycle through the main tavern door and up the bar. The subject grabbed a beer off the bar and started drinking it. The bartender yelled to the subject and asked him what hell he was doing because that was not his beer. The subject then said, "dont worry about it, I have money". The bartender then told him to leave and requested two large bar hands to help escort him out. The subject then stated, "I don't want to fight". The subject then ran out of the bar, and left the blue bicycle in the bar. W1 last saw D1 walking south on Long Neck Rd. W1 did not wish any prosecution against D1.


INTERVIEW PC1(Stress, Tricia)


PC1 is the girlfriend of D1. I was able to determine this because I recovered D1's cellular telephone from the scene and her number was on there twice as a missed call. I called her at approx 2330hrs and determined the following. PC1 stated that she has been dating D1 for about 2 months. She knew him as a painter who had recently came to Delaware from North Carolina. When she first met him, he was temporarily residing at the Sea Esta Hotel. She became his girlfriend and allowed him to move into her residence at ████████████████████. According to PC1, she last saw D1 on today's date at 2100hrs at a friend of hers in Enchanted Acres MHP. PC1 stated that he was acting weird, but thought he was just drunk. She started to speak with him, and he became very emotional. D1 then stated that he had to get back to his dad's home in North Carolina......RIGHT NOW. PC1 tried to reason with him by telling her she would take him to North Carolina in June. D1 began acting more emotional and stated that he wanted PC1's car. She refused to allow him her car and D1 started saying, "I've got to get a car, I've got to get a car"! D1 then left the residence, possibly on his bicycle, which she described as a blue mountain style bicycle. PC1 was unfamiliar with where D1 went to after he left the residence.

| Reporting Officer | Supervisor Approval |
| --- | --- |
| CPL/2 MENDEZ  - 3862 2 | STEPHEN T SMYK PSPT697 Date 05/13/2005 0240 |

PC2 (Kraft, John) PC2 was on the scene and assisted me when D1 was resisting arrest. PC2 retrieved my flashlight after it fell to the ground. PC2 can be clearly seen on the video at the front of my police car while I was trying to detain the subject. I attempted to re-contact PC2 to thank him for assisting me during the incident, but was unable to reach him.


INVESTIGATIVE ACTION


On 051105 at 2137hrs I was dispatched to the parking lot of Uncle Willies on Long Neck Rd. to investigate a disorderly subject complaint. Upon arrival, I contacted & interviewed V1 reference the facts of the complaint. While interviewing him, W1 came over to where I was speaking with V1 and made me aware of another incident that had just occurred which was determined to be a related matter. I quickly left Uncle Willies so I could attempt to locate this subject before he got too far away.


As I traveled south on Long Neck Rd, I could see a subject walking on the right shoulder in a southern direction. As I got closer, I could see that the subject was shirtless and was wearing light colored pants. I pulled in behind the subject, and identified myself. When this subject turned around, I observed tattoos on his left and right chest. I ordered this subject to the ground and he did so. I then told him to put his hands behind his back and allow me to cuff him, which he did. At this time, I began to get his personal information so I could perform a wanted check. This subject advised that his name was David S. Yarnall(D1) and his DOB was ███████. I also advised SUSCOM that I had the subject in custody, on the ground, and in front of my police vehicle.


When I started to go back to the police car, D1 started to get up and onto his feet. D1 was able to get back onto his feet before I could get back over to him. I immediately advised SUSCOM that D1 was resisting and that I needed assistance. When I reached D1, he was starting to walk away from from my police car towards Long neck Rd. When I reached D1, I put hands on him and asked him to get back on the ground, which he refused to do. D1 then started to quickly walk away from me, and I latched onto his left arm with my left arm.


Once I was able to grab D1's arm, I attempted to put him in an arm bar and restrain him up against the passenger side of my patrol vehicle. D1 continued to pull away and was actually moving both of us towards Long Neck Rd. As I struggled with D1, I tried to get my right foot infront of his and trip him face first onto the ground. D1 seemed extremely strong and

| Reporting Officer | Supervisor Approval |
|---|---|
| CPL/2 MENDEZ  - 3862 2 | STEPHEN T SMYK PSPT697 Date 05/13/2005 0240 |

Case 1:05-cv-00527-SLR   Document 80   Filed 12/21/2006   Page 30 of 32

Investigative Narrative - Continued

continued to keep his leg out just far enough that I was unable to trip him forwards or backwards.

Throughout this entire incident, I yelled at D1, telling him to stop resisting. While being pulled around by D1, I told him that I was going to have to strike him with my flashlight if he did not stop resisting. This warning was yelled twice to no avail. While D1 continued moving around with me latched onto his left arm, I raised by division issued mag flashlight and struck D1 across the right side of his head. D1 continued pulling away, and I struck him a second time on the right side of his head causing blood to start running down D1's face. When I struck him the second time, I dropped my flashlight, which was quickly retrieved by a citizen who stopped to help. When D1 started bleeding, I quickly called SUSCOM and had them dispatch an ambulance.

After striking D1 with the flashlight, I was able to maneuver him to the right hood area from this point forward, the incident was captured on video (7SP-6345/Tape 7-218). Prior to, the incident was captured on audio only.

I continued to struggle with D1 and had to physically restrain him on the hood of my police vehicle. D1 would seem to calm momentarily before once again trying to raise up off the hood of my car. Everytime D1 tried to raise up, I yelled for him to stay down. Even with my body weight pressed against D1, he was able to lift up and try to stand erect, which was unsuccessful. This struggle went on for a approx 5 minutes before police assistance arrived.

While still pinned up against the car, I could hear sirens approaching. Moments later, 2 Millsboro Police officers arrived and applied the Tazer device upon D1. I released D1 after the tazer shock and he fell forward to the ground. Moments later D1 got back up onto his feet and started running towards Grotto Pizza. We gave chase on foot and caught him in front of the restaurant. At this time, Millsboro Police fired their Tazer device into D1's bare back and shocked him causing him to collapse to the ground.

Over the course of approx 10 minutes, the defendant had to be physically restrained on the ground until the paramedics could sedate him.

| Reporting Officer | Supervisor Approval |
|---|---|
| CPL/2 MENDEZ   - 3862 2 | STEPHEN T SMYK PSPT697 Date 05/13/2005 0240 |

D1 was then transported to Beebe Medical Center by Millsboro ambulance with Tfc. Ballinger riding along to provide security. Upon their arrival at Beebe Hospital, D1 had to be sedated twice again in order to be treated for an approx 1 inch laceration to his right scalp. After being treated for this injury, Tfc Ballinger brought him back to DSP-7 for processing & interview procedures.

Following processing, D1 was committed to SCI without bail or an arraignment due to being high on illegal drugs. Also, the state of Virginia was contacted and advised where the defendant was located so they could arrange extradition procedures. This case is currently awaiting a preliminary hearing at Sussex County CCP.

***D1's bicycle and personal belongings were turned over to his girlfriend, Tricia Stress.***

EXAMINATION OF CRIME SCENE -

N/A

EVIDENCE -

1. MVR tape #7-218, currently in possession of Capt. Nolt.

2. Force Report from Millsboro PD

3. Copy of D1's wanted status from the state of Virginia.

4. Original medical instructions for D1 that he left at DSP-7. These indicate the presence of PCP, Cocaine & Marijuana in his circulatory system.

| Reporting Officer | Supervisor Approval |
| CPL/2 MENDEZ  - 3862 2 | STEPHEN T SMYK PSPT697 Date 05/13/2005 0240 |

PROSECUTIVE ACTION -

Arrested for two counts of Attempted Carjacking, Criminal Mischief & Resisting Arrests.
Fugitive from another state was prosecution declined due to serious local charges being placed
upon the defendant.

| Reporting Officer | | Supervisor Approval | |
|---|---|---|---|
| CPL/2 MENDEZ  - 3862 2 | | STEPHEN T SMYK  PSPT697  Date 05/13/2005 0240 | |
| Detective Notified | | Referred To | |

| Solvability Factors | ☐Witness ☐Suspect Located | ☐M. O. ☐Suspect Described | ☐Trace Stolen Property ☐Suspect Identified | ☐Suspect Named ☐Suspect Vehicle Identified | Status Closed |