DELAWARE STATE POLICE RULES AND REGULATIONS (26.1.1)

1. Compliance with Laws, Rules, Regulations, Orders

    A. Members shall observe and obey State and Federal Laws, municipal ordinances, Rules, Regulations, Job Performance Standards, Orders, the requirements of the Complaint and Disciplinary Procedures of the Division, rules of the Training Academy while in attendance there, and the Standard Operating Procedures of the Division.

    B. Any member who is convicted of a crime after being hired by the Division, whether on-duty or off-duty, will be subject to automatic dismissal if the crime is a felony, or a misdemeanor involving moral turpitude, or any offense involving dishonesty or false statement, any drug law, or a violation of public trust.

2. All members shall maintain a loyalty to the Division of State Police and its associates as is consistent with State and Federal Law, Rules, Regulations, and Orders of the Division.

3. A Member of the Division having knowledge of a fellow police officer violating State or Federal Laws, municipal ordinances or Rules, Regulations, or Orders of the Division, or disobeying orders, Job Performance Standards, the Complaint and Disciplinary Procedures of the Division, rules of the Training Academy while in attendance there, and the Standard Operating procedures of the Division, shall report such violations to the Internal Affairs Officer.

4. Members shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Division. Conduct unbecoming an officer shall include that which tends to bring the Division into disrepute or reflect discredit upon the officer as a member of the Division, or that, which tends to impair the operation and efficiency of the Division or the officer.

5. No member of the Division of State Police shall engage in any conduct, which constitutes neglect of duty.

**OPR: Superintendent's Office, OIC Internal Affairs**

6.  All members of the Division of State Police shall render assistance and take appropriate enforcement action toward aiding a fellow police officer whose personal safety is actually or potentially threatened.

7.  All sworn members of the Delaware State Police are required to establish and maintain their actual bona fide residence and domicile within the boundaries of the State of Delaware. Recruit troopers are required to meet this residency requirement prior to beginning the Field Training Officer (FTO) program. Decisions on residency require judgment based upon the totality of circumstances present in each case. The factors cited below are among the indicia, which will be considered in applying that judgment on a case-by-case basis.

    Residence means more than mere physical presence and includes the legal concept of domicile. Residence shall mean actual living quarters, which must be maintained within the State by an officer and his or her immediate family (spouse and/or children). Neither voting in the state or the payment of taxes of any kind by itself shall be deemed adequate to satisfy the requirements of this section. Ownership of real property within the State, when not coupled with maintaining of actual living quarters in the State as herein required shall be deemed insufficient to meet the requirements of this section. No consideration shall be give to the fact that an officer intends to maintain a residence in the State if he or she does not maintain a residence as specified above.

    The determination of bona fide residency shall include, but not be limited to, an overall consideration of the following factors, with the weight of any factor to be determined by the hearing officers based upon the evidence received:

    A.  At what location do the officer's immediate family members reside and attend school?

    B.  At what location does the officer keep his or her tangible personal property and effects?

    C.  At what location does the officer receive his or her general correspondence?

    D.  At what location does the officer spend his or her off duty time?

    E.  What location does the officer list as his or her residence for official documents?

    F.  What location is more suitable in terms of aesthetics, habitability, comparative comfort, convenience and regular access?

    G. At what location is habitation fixed without any present intent to move?

    H. At what location is there an apparent intent to make a permanent domicile?

    I. In the event that one location is owned and the other is rented or shared with persons not of the immediate family, some presumption of residency shall be applied to the non-shared property.

8. It shall be the duty of every member of the Division to maintain the high public regard in which the Division is held by giving assistance when it is requested or otherwise necessary and by impartial administration of the law.

9. No member shall interfere with the operation or discipline of the Division provided, however, the foregoing shall not preclude proper utilization of the grievance procedures.

10. Members shall treat as confidential the official communications and business of the Division.

11. No member shall make any effort to go outside the structure of the Division of State Police in an effort to bring influence to bear upon the Superintendent for the purpose of securing promotion or transfer or to avoid the penalties for reprehensible action or conduct.

12. No member shall make any public statement, written, or oral, criticizing the Division, or any member thereof, where such expression is:

    A. Defamatory

    B. Unlawful

    C. Of such a nature that it is likely to impair the operation of the Division; or

    D. Made with reckless disregard for its truth or falsity

13. No member shall threaten, strike or otherwise assault any other member of the Division.

14. No Division record shall be removed from any Troop without prior authorization of the Troop Commander. Headquarters records shall not be removed without the authorization of the Section Chief concerned, or the Superintendent. No record shall be removed in any case without proper notation being made as to the name of the person receiving it and the date it was removed.

15. No member shall knowingly make a false statement, falsify any written or verbal report or knowingly withhold material matter from such report or statement. (Revised 07/05)

16. No member shall knowingly make a false official report or knowingly enter or cause to be entered in any Divisional book or record any inaccurate, false or improper entries or misrepresentation of facts.

17. No member shall knowingly have made a false statement, falsified any verbal or written report, or have willfully and/or intentionally withheld material matter from such report or statement in the pre-employment process.

18. **Disclosure of Information - Generally**

    A. Sources of information or the names of informants shall not be disclosed to anyone outside the Division.

    B. Any information obtained in an official capacity shall not be disclosed either in writing or orally to any unauthorized person, and no officer will divulge any matter that is his duty to keep secret.

    C. This rule is not to be construed so as to interfere with the proper cooperation with regularly constituted law enforcement agencies or such other agencies as may be assisting in an investigation.

19. **Disclosure of Information - News Media**

    A. A member shall give information to the news media in accordance with procedures established by the Division.

    B. Under no circumstances shall any information be released to the news media which might potentially jeopardize the successful completion of any case which has not been finally adjudicated.

20. **Property**

    A.  Care of Property

        (1) Division property shall be used for official purposes only and in the capacity for which it was designed.

        (2) No member shall negligently damage, misuse, fail to properly maintain or wrongfully dispose of any property of the Delaware State Police.

        (3) Members shall be responsible for compensating the Division for lost or damaged property, where such property has been lost or damaged as a consequence of malicious or grossly negligent conduct by the member.

        (4) No member shall cause or permit any property or equipment to be modified or otherwise altered, except in accordance with maintenance and repair standards approved by the Superintendent.

    B.  Seized or Recovered Property

        (1) In the course of his duties each member of the Division is responsible and accountable for all property seized, recovered, held as evidence, or otherwise coming into his possession, as prescribed by Standard Operating Procedures and orders of the division.

21. **Deadly Force**

    A.  A member shall carry, handle, transport, and use firearms in a manner as to avoid endangering any innocent person.

    B.  A member will be justified in using deadly force **ONLY** in the following circumstances.

        (1) **Use of deadly force in self-defense.**

            (a) A member may use deadly force to defend himself or to defend another person, when he believes that such force is immediately necessary to protect himself or another person from death or serious physical injury.

VII-3-5

(2) **Use of deadly force to effect an arrest.**

    (a) A member may use deadly force to effect an arrest **ONLY** after **ALL** of the following conditions have been met:

All other reasonable means of apprehension have been exhausted; **AND** It is definitely believed that the arrest is for a **FELONY** involving serious physical injury or the threat thereof and the deadly force is directed **ONLY AT A VEHICLE** for the purpose of disabling it, so that an arrest can be made; **OR**

It is definitely believed that the arrest is for a **FELONY** involving physical injury or the threat thereof, in which case the deadly force may be directed at the person being arrested; **AND** It is definitely believed that the deadly force will not endanger innocent persons; **AND** It is definitely believed that should deadly force not be used, there is a substantial risk that the person to be arrested will cause death or serious physical injury if the apprehension is delayed.

(3) **Use of deadly force to prevent the commission of a crime.**

    (a) A member may use deadly force to prevent the commission of a crime **ONLY** after **BOTH** of the following conditions have been met:

        (1) If there is a substantial danger that death or serious physical injury will be caused to another person if the crime is not prevented by deadly force; **AND**

        (2) It is definitely believed that the deadly force will not endanger innocent persons.

(4) **Use of deadly force in misdemeanor crimes.**

    (a) Under no circumstances shall a member use deadly force upon any person who is fleeing to avoid arrest for a misdemeanor charge.

C. Any provision contained herein, which is inconsistent or in conflict with any written directive concerning deadly force, shall be superseded by that directive.

22. **Use of Force** (1.3.1)

    A.  No member of the Division shall use excessive, unnecessary or unreasonable force in the performance of his duties.

23. **Operation of Departmental Vehicles**

    A.  Vehicles, aircraft, and equipment shall be operated in a safe and cautious manner in obedience to law and established procedures. **Under no circumstances** shall traffic rules and regulations be violated unless a police **emergency exists and vehicle emergency equipment is used** provided, however, that where necessary to avoid detection, a member may refrain from using emergency equipment with due regard for public safety.

    B.  **Members involved in a collision with a departmental vehicle will immediately notify their supervisor and the appropriate communications center.**

24. **Intoxicating Beverages, Drugs**

    A.  No member shall bring any intoxicating beverage into any building, quarters, or property officially occupied by the State Police, nor shall he permit the same to be brought therein, except on order of a physician for medical purposes, as evidence in current cases, or at the discretion of the Superintendent.

    B.  All members of the Division are strictly prohibited from consuming any intoxicating beverages while on duty, in uniform, or partial uniform, except when in performance of duty or at the discretion of the Superintendent.

    C.  No member shall use intoxicants to the extent that there is any measurable evidence at a level of .01 or greater and/or any observable manifestation of consumption of alcohol while reporting to or performing his/her regularly scheduled duties. No member shall use intoxicants to the extent that there is any measurable evidence while driving a state-owned vehicle whether on-duty or off-duty. (Revised 07/05)

D.  No member of the Division shall, while in uniform or on duty, enter any place where intoxicating beverages are sold (excluding those establishments holding a restaurant license), except when required in the performance of his duties.

E.  Intoxicating beverages, which are held as evidence, shall be properly tagged and processed in accordance with Division procedures.

F.  No member shall possess or consume any controlled substance or other like substance except as permitted by law.

G.  Any controlled substance or other like substance that is held as evidence shall be properly tagged and processed in accordance with Division procedures.

25. **Obedience to Orders**

   A.  No member shall knowingly disobey a lawful command or order, either verbal or written, of a senior officer.

26. No member of the Division shall feign illness or otherwise abuse sick leave.

27. No member of the Division shall absent himself without proper leave. Any member, prior to absenting himself on vacation or leave, shall leave with his Supervisor his vacation or leave address.

28. **Assigned Patrol or Post**

   A.  A member of the Division assigned to patrol or post shall not leave the patrol or post, except for police necessity or personal necessity, unless properly relieved.

   B.  If forced to quit his patrol or post, the member shall, at the first opportunity, report same to his superior officer, and the reason therefore.

29. Members of the Division shall be punctual in attendance to all calls, requirements of duty, court appearances and all other situations where time is specified.

30. No member shall recommend or request the reduction or dismissal of any criminal or traffic charge which has been filed against any person who has been arrested, or enter into any agreement with a prisoner or his counsel regarding the charge or charges for which the prisoner may be prosecuted, except as authorized by the Superintendent.

31. Members shall refrain from knowingly having personal contacts or business transactions with persons who are under criminal investigation or indictment, or who have an open and notorious reputation in the community for felonious criminal or immoral behavior, except when necessary to engage in such conduct in the performance of their duty.

    A. Any member subpoenaed or requested to testify for the defense in any hearing or trial, or against the department in any hearing or trial, shall notify the Superintendent in writing via the chain of command immediately upon receipt of the subpoena or request. Members shall not appear, without prior written approval of the Superintendent or his representative, as a character witness for any defendant in a criminal trial or inquiry.

32. Whenever a potential conflict of interest may exist, members are prohibited from knowingly engaging in any commercial transaction with any complainant, suspect, witness, defendant, prisoner, or other person involved in any case which has come to their attention through their Division employment, unless such transaction is specifically authorized by the Superintendent.

33. A member shall not indulge in any type of gambling while in uniform or on duty, except when authorized by the Superintendent.

34. Members shall not be permitted to follow or engage in any other calling, occupation, or business, without authority from the Superintendent.

35. No member of the Division shall permit the use of a photograph of himself which identifies him as a member of the Division in connection with any testimonial or advertisement of any commodity or commercial enterprise; nor shall he endorse or subscribe to any such testimonial or advertisement or authorize the use of his title, rank, or identification with the Division in this connection.

36. No member of the Division shall, in an official capacity, solicit subscriptions, sell tickets, or collect donations for any purpose whatsoever, except by permission of the Superintendent.

37. Members shall not accept any gift, gratuity, or reward in money or other consideration for services rendered in the line of duty to the community or to any person, business or agency, except lawful salary and other remuneration, which may be authorized by law, or by permission of the Superintendent.

38. Members shall not, under any circumstances, accept or solicit any gift, gratuity, loan or fee where there is any direct or indirect connection between the solicitation and their divisional membership or employment, except by permission of the Superintendent.

39. **Political Activities**

    As per Title 11, Chapter 9200(a), members of the Division shall have the same rights to engage in political activity as are afforded to any other person, except:

    A. No member shall solicit any assessments, contributions, or services for any political party while on duty, in uniform, or while acting in his official capacity.

    B. No member shall actively participate in the campaign of any candidate for partisan political office while on duty, in uniform, or while acting in his official capacity.

    C. No member of the Division shall sign any petition while on duty, in uniform, or while acting in his/her official capacity, except on authority of the Superintendent.

40. **Harassment**

   A. The Division of State Police prohibits any harassment based on sex, race, national origin, or religion as unlawful discrimination under Title VII of the Civil Rights Act of 1964, and Section 711 of Title 19 of the Delaware Code. The Division also prohibits any form of retaliation against a person bringing a claim of harassment. The Division will take prompt, remedial action in response to any claim of harassment.

   **Revised: 01/2007**

   B. Sexual harassment may occur when a supervisor demands sexual favors as a condition of employment (job assignment, promotion or transfer), or when a supervisor threatens reprisal after a rejection of sexual advances. Sexual harassment also includes actions by supervisors or co-workers which create an intimidating, offensive, or hostile work environment, such as: propositions or pressure to engage in sexual activity; unwanted bodily contact; unwanted sexual jokes, innuendoes, or comments; inappropriate comments about appearance; or display of pornographic pictures or movies in the workplace.

   C. Racial, national origin, or religious harassment is behavior that might heckle, embarrass, or deride an individual because of his or her race, ethnic group, or religion. Examples of such harassment include: racial, ethnic, or religious slurs or derogatory remarks or statements; wearing of or possession of items depicting or implying racist, supremacist, or anti-Semitic organizations or insignia or symbols associated with such organizations; and display of pictures or objects that portray or are associated with negative racial, ethnic, or religious stereotypes.

D.  A Division employee who believes that he or she has been the victim of harassment in the workplace must first try to make it clear to the harasser that his or her conduct is unacceptable and unwanted. If that does not resolve the problem, the victim is responsible for informing the proper authorities of such activities. The proper authorities within the Division are the highest-ranking or most senior officer in the Internal Affairs Division and/or the Division's EEO/AA Representative in the Human Resources Office.

E.  The Equal Opportunity Employment Commission and the Delaware Department of Labor are the federal and state agencies charged with enforcement of the anti-harassment laws. Victims of harassment in the workplace may contact those agencies in addition to, or in lieu of, contacting Internal Affairs or the Division's EEO/AA Representative.

F.  Internal Affairs investigations of sexual or other harassment will be conducted in a manner to insure confidentiality to the extent possible. The investigator will not disclose the complainant's identity to the alleged harasser unless essential to the allegations made. Complainants who request that no investigation be conducted or that the Division take no action are advised that the Division has a legal obligation to investigate the matter and to take necessary action to make sure the violation does not occur again.

## FORCE POLICY
(1.3.1)(1.3.9a)

1. No member of the Division shall use excessive or unreasonable force in the performance of his/her duties. (1.3.1)

2. Only equipment designed for force situations which is authorized and issued by the Division shall be carried or used by officers when on scheduled and/or assigned tours of duty.

## DEADLY FORCE

1. **Definition:**  (1.3.1)(74.3.1)

   A. As promulgated by Title 11, Section 471 which defines "Deadly Force" as meaning force which the defendant (police officer) uses for the purpose of causing or which he knows to create substantial risk of causing death or serious injury. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force.

   B. "Deadly Force" is not limited to firearms and does include the impact weapon as well as that which can be interpreted in the above definition of "Deadly Force".

2. **Use of Deadly Force in self-defense:**  (1.3.2)

   A. When necessary to protect himself/herself, from death or serious physical injury, a member of the Division may use his/her officially issued handgun, shotgun, or other official firearm and ammunition in self-defense. That which he/she is authorized to do in his/her own defense, he/she is authorized to do in defense of any other person when he/she is present and such action is immediately necessary to prevent death or serious physical injury to the other person.

**OPR:** Deputy Superintendent

        1.   A member of the Division shall not discharge a firearm from a moving vehicle, or in the direction of a moving vehicle, unless the occupants of the vehicle are using deadly force against the member or another person, and such action is necessary for self-defense or to prevent death or serious physical injury to the other person.

    B.   Although authorized under the above circumstances, personnel do not have the right to resort to the use of firearms to protect themselves or other persons from assaults which are not likely to result in death or serious physical injury.

3. **Use of Deadly Force to Effect an Arrest:** (1.3.1)(1.3.2)(74.3.1)

    A.   Deadly force is permissible to effect an arrest <u>only</u> after <u>all</u> of the following conditions have been <u>met</u>:

        1.   All other reasonable means of apprehension have been exhausted. (1.3.1)

        2.   It is believed that:

            a.   The arrest is for a felony involving serious physical injury or the threat thereof, in which case the deadly force may be directed at the person being arrested.

            b.   The deadly force will not endanger innocent persons.

            c.   Should deadly force not be used, there is a substantial risk that the person to be arrested will cause death or serious physical injury if the apprehension is delayed. (1.3.1)

4. **Use of Deadly Force to Prevent the Commission of a Crime:** (1.3.2)

    A.   Deadly force is permissible to prevent the commission of a crime only after both of the following conditions have been met:

        1.   If there is a substantial danger that death or serious physical injury will be caused to another person if the crime is not prevented by deadly force.

        2.   It is believed that the deadly force will not endanger innocent persons.

    B.    Should an officer of the Division become involved in an **incident that results in serious physical injury or death**, he/she shall be placed on administrative duty to facilitate an evaluation of the incident and the officer's well being. The evaluations shall take place in an expeditious manner and all efforts will be made to reinstate the officer to regular duty as soon as possible. (1.3.8)

5. **Misdemeanor Cases:** (1.3.2)(74.3.1)

    A.  Under no circumstances shall a member fire upon a person who is fleeing to avoid arrest on a misdemeanor charge. The Division recognizes that it is better to allow a misdemeanant to escape that to take his/her life, and the police officer has no legal or moral authority to resort to the use of firearms in such cases.

6. **Warning Shots** Shall Not be Fired Under Any Circumstances.(1.3.3)

7. <u>**Never Shoot Unless You Know You Have a Legal and Moral Right to Kill.**</u>

8. **Detention Resistance Report:** (1.3.6c)(1.3.7)

    A.  The following procedure will be followed when completing a **Detention Resistance Report (form 396)**.

    B.  Whenever any force of an unusual nature whether physical or with the use of assigned equipment or any other instrument, is utilized to subdue and/or effect or attempt to effect an arrest on a subject(s), a network **Computer generated** Detention Resistance Report will be completed prior to the termination of the arresting officer's tour or duty following the directions in the manual found at each Troop.

    C.  This report shall be completed and distributed to and reviewed by the following:
    1.  Immediate Supervisor
    2.  Troop Commander
    3.  Superintendent
    4.  Operations Major

    D.    Copies are to be received by C - 1, 2 & 3 the next business day.

    E.    Information presently being furnished to the Division in such situations shall in no way be affected by this policy. (1.3.9)

9. **Prohibited Firearms:**

    A.    No personally owned weapon shall be carried by members of the Division when on scheduled and/or assigned tours of duty.

10. Investigation of Accidental or Intentional Discharge of Official Division Firearms: (1.3.6)(1.3.7)

    A.    Except as noted in Paragraph C, the officer shall report any accidental or intentional discharge of his/her official firearm immediately to his/her immediate supervisor. This should not be interpreted to include firearms training on the pistol range. The supervisor will immediately notify the Firearms Training Unit Officer In Charge who will assign a Firearms Training Unit Instructor, local to the incident, to investigate the incident

    B.    In the case of an accidental discharge that does not involve personal injury, <u>the Criminal Investigative Troop for the county in which the incident took place shall be notified and a detective shall be assigned to conduct</u> a complete investigation. A full report, detailing the incident, will be forwarded to the <u>Criminal Operations Officer</u> within 72 hours.

    C.    Incidents where a firearm is intentionally discharged in order to dispatch an injured animal for humane reasons need only be documented by <u>memorandum to the Troop Commander, who shall maintain an appropriate file at their respective troop.</u>

          <u>Incidents in which a divisional weapon is intentionally discharged to prevent an attack by an animal must be properly documented by a full investigative report with a copy being sent to the Criminal Operations Officer within 72 hours. A Detention Resistance Report will also be completed under these circumstances and become part of the case file.</u>