## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID S. YARNALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CONSOLIDATED |
| vs. | ) | Civ. No. 05-527-SLR |
| | ) | Civ. No. 06-501-SLR |
| CORPORAL ANTHONY MENDEZ, | ) | Civ. No. 06-520-SLR |
| DELAWARE STATE POLICE TROOP 7, | ) | |
| PTLM LOWE and PFC BUCHERT, | ) | |
| MILLSBORO POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**STATE OF DELAWARE'S OPENING BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT AND ANSWERING
BRIEF TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

W. Michael Tupman, Esquire
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE 19904
(302) 739-7641

Attorney for State of Delaware

Date: May 3, 2007

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF UNDISPUTED MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    The Eleventh Amendment Bars<br>            Yarnall's Claims For Monetary<br>            Damages Against The State . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Neither The State Police Nor Corporal<br>            Mendez Is A "Person" Subject To Suit<br>            Under Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    Yarnall Fails To State A Claim For<br>            A Violation Of The Fifth, Eighth,<br>            Or Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    The Use Of Force By Corporal Mendez<br>            Was Objectively Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      E.    Corporal Mendez Is Not Responsible<br>            For The Action Of Patrolman Lowe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      F.    Corporal Mendez Is Entitled To<br>            Qualified Immunity From Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

UNREPORTED CASES – ATTACHED *

*Kline v. Howard R. Young Correctional Institution*,
      Civ. No. 06-678-SLR, 2006 WL 3366391 (D. Del., Nov. 17, 2006)

*Hannah v. City of Dover*,
      Civ. No. 01-312-SLR, 2005 WL 735882 (D. Del., Mar. 30, 2005),
      *aff'd*, 152 Fed.Appx. 114 (3rd Cir., Oct. 11, 2005)

*Clark v. Condon*,
      Civ. No. 01-654-SLR, 2002 WL 31102741 (D. Del., Sept. 20, 2002)

*   Copies of unreported cases cited in this Opening Brief are attached to the hard-copy of that brief filed with the Clerk of the Court.

## TABLE OF CITATIONS

**CASES**                                                                                           **Page No.**

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ..................................................... 16

*Chambers v. Doe*,
    453 F. Supp.2d 858 (D. Del. 2006) (Robinson, C.J.) ........................... 13

*Clark v. Condon*,
    Civ. No. 01-654-SLR, 2002 WL 31102741 (Sept. 20, 2002) ................... 12,13

*Graham v. Connor*,
    490 U.S. 386 (1989) ................................................. 12,13

*Hannah v. City of Dover*,
    Civ. No. 01-312-SLR, 2005 WL 735882 (D. Del., Mar. 30, 2005),
    *aff'd*, 152 Fed.Appx. 114 (3rd Cir., Oct. 11, 2005) ........................... 12-13

*Kentucky v. Graham*,
    473 U.S. 159 (1985) .................................................. 10

*Kline v. Howard R. Young Correctional Institution*,,
    Civ. No. 06-678-SLR, 2006 WL 3366391 (D. Del., Nov. 17, 2006) ............... 10

*Metcalf v. Long*,
    615 F. Supp. 1108 (D. Del. 1985) (Longobardi, J.) ......................... 11-12

*Neeley v. Samis*,
    183 F. Supp.2d 672 (D. Del. 2002) (Robinson, C.J.) ........................ 16-17

*O'Neill v. Krzeminski*,
    839 F.2d 9 (2nd Cir. 1988) ............................................. 14,15

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984) .................................................. 10

*Riley v. Newton*,
    94 F.3d 632 (11th Cir. 1996), *cert. denied*, 519 U.S. 1114 (1997) .............. 14-15

**CASES**                                                                **Page No.**

*Saucier v. Katz,*
    533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Will v. Michigan Department of State Police,*
    491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Yarnall v. Mendez,*
    433 F. Supp.2d 432 (D. Del. 2006) (Robinson, C.J.) . . . . . . . . . . . . . . . . . . . . . . . . . 15


**STATUTES**


42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,10-11

iv

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On July 5, 2005, plaintiff David S. Yarnall ("Yarnall") sued Corporal Anthony Mendez, the Delaware State Police, and the Millsboro Police Department alleging they used excessive force in arresting him on May 11, 2005.

On January 3, 2006, Corporal Mendez and the State Police answered the complaint denying the allegations and asserting affirmative defenses of sovereign and qualified immunity.

On June 9, 2006, this Court granted a motion to dismiss the complaint against the Millsboro Police Department for failure to state a claim.

On August 10, 2006, this Court issued a Rule 16 scheduling Order setting December 11, 2006 as the discovery cut-off and January 11, 2007 as the date for dispositive motions.

On September 20, 2006, this Court granted Yarnall's motion to amend his complaint to name two Millsboro police officers -- Patrolman Roy Lowe and Patrolman First Class Todd Buchert -- as individual defendants ("the Millsboro Defendants"). This Court also consolidated the cases against the State Police, Corporal Mendez, and the Millsboro Defendants.

On December 4, 2006, the Millsboro Defendants answered the amended complaint and cross-claimed against the State for contribution. On December 20, 2006, the State and the Millsboro Defendants filed a stipulated order to dismiss the cross-claim.

Prior to the December 11, 2006 discovery cut-off, the State provided Yarnall with the documents he requested in his first and second document production requests and answered his first set of interrogatories.

On December 13, 2006, Yarnall filed a motion for summary judgment and opening brief. On January 4, 2007, this Court amended its Rule 16 scheduling Order to extend the discovery cut-off

1

until April 4, 2007 and the date for dispositive motions until May 4, 2007.

On April 4, 2007, the State provided Yarnall with the documents he requested in his third document production request.

On April 11, 2004, Yarnall moved to amend his December 13, 2006 summary judgment motion and brief. [1]

On May 3, 2007, the State filed a motion for summary judgment together with a sworn affidavit of Corporal Mendez. This is the State's Opening Brief in support of its motion for summary judgment and Answering Brief to Yarnall's motion for summary judgment.

---

[1]     For the most part, Yarnall's proposed amendments to his summary judgment motion are a re-hash of his earlier arguments. To the extent he tries to assert new causes of action (*e.g.*, for illegal search and seizure by a civilian bystander, prosecutorial misconduct, and defamation), the State objects. Those claims are against non-parties and untimely.

2

## SUMMARY OF ARGUMENT

1.     The Eleventh Amendment bars any claim for monetary damages against the Division of State Police, an agency of the State of Delaware, and Corporal Anthony Mendez in his official capacity.  Yarnall does not seek prospective injunctive relief against Corporal Mendez in his official capacity.

2.     This Court should dismiss the Section 1983 claims against the Division of State Police and Corporal Mendez in his official capacity because they are not "persons" subject to suit under Section 1983.

3.     This Court should dismiss Yarnall's claims for alleged violation of his rights under the Fifth, Eighth, and Fourteenth Amendment as a matter of law.  Yarnall's complaint is directed to the method of his arrest and subject to a Fourth Amendment reasonableness standard.

4.     Corporal Mendez used an objectively reasonable amount of escalating force to arrest Yarnall.  Yarnall was a violent suspect who had tried to car-jack two vehicles (felony crimes).  Yarnall was high on drugs (marijuana, cocaine, and PCP) and tried to escape while Corporal Mendez was checking his identification.  Even when Corporal Mendez had Yarnall in an armlock, Yarnall tried to drag Mendez towards a heavily trafficked highway.  Corporal Mendez warned Yarnall several times that if he did not stop resisting Mendez would hit him with his flashlight. Corporal Mendez hit Yarnall to prevent him from escaping and to protect both of their physical safety.

5.     Corporal Mendez is not responsible for the actions of one of the Millsboro Defendants (Patrolman Lowe) for using his taser gun on Yarnall when Lowe first arrived at the scene. Corporal Mendez did not have operational or supervisory control over an officer from another police department dispatched as back-up.  Corporal Mendez did not instruct or ask  Lowe to use a

3

taser on Yarnall when Lowe first appeared on the scene, nor did Corporal Mendez have a realistic opportunity to prevent  Lowe from using his taser.

6.      Corporal Mendez is entitled to qualified immunity from suit.  It would not be clear to a reasonable officer that his conduct was unlawful in the situation Mendez confronted.  A reasonable officer in his position would have believed that striking Yarnall with the best weapon available at the time to subdue Yarnall was within the bounds of appropriate police responses.  It cannot be said that there was a clearly established rule that would prohibit using the force Corporal Mendez did to subdue Yarnall.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The undisputed material facts are based on the sworn affidavit of Corporal Anthony Mendez ("Mendez Aff.")

On the night of May 11, 2005, Corporal Mendez started his twelve-hour patrol shift at 7:00 p.m. Mendez Aff. ¶3. At 9:37 p.m., the Sussex County Emergency Operations Center (SUSCOM) dispatched Mendez to a disorderly subject complaint in the area of Uncle Willie's convenience store on Long Neck Road. *Id.*

In the parking lot of Uncle Willie's Corporal Mendez met the victim, Conrad Davenport. *Id.* ¶4. Davenport had been driving east on School Lane approaching Long Neck Road when a white minivan in front of him slammed on the brakes and swerved to the right. *Id.* When the minivan swerved, Davenport saw a blue mountain-style bicycle in the middle of the road. *Id.* Davenport stopped to avoid hitting the bicycle. *Id.* A shirtless white male with tattoos on his right and left chest (later identified as Yarnall) came out of the woods, jumped on the hood of Davenport's car, and started beating the windshield with a belt. *Id.*

The man then jumped off the hood and approached the driver's side door, reached through the open window and shouted, "Move!" *Id.* ¶5. Davenport feared that the man was trying to steal his car so Davenport accelerated and drove into the lighted parking lot at Uncle Willie's. *Id.*

After interviewing Davenport, Corporal Mendez learned about another attempted car-jacking which occurred around the same time. *Id.* ¶6. Corporal Mendez located the victim, Erica Donahue, in the convenience store parking lot. *Id.* At around 9:30 p.m., Donahue had been

driving west on School Lane when she saw a friend walking along the roadway and stopped to ask

if she needed a ride. Mendez Aff.¶6. A man (later identified as Yarnall) came out of a wooded area and tried to open the rear passenger door, but Donahue pushed the automatic locking mechanism and sped away. *Id.*

While Corporal Mendez was interviewing witnesses in parking lot, a man identifying himself as Jason Bender came over and told Corporal Mendez about another incident which had occurred at Whiskers Restaurant and Tavern (located across the street from Uncle Willie's). *Id.* ¶7. *Id.* Bender told Corporal Mendez that around 9:40 p.m. a shirtless white male with tattoos rode his blue bicycle through the main tavern door and up to the bar where he started drinking another man's beer. *Id.* When confronted, the man ran out of the bar leaving his bicycle. *Id.*

Corporal Mendez left the parking lot at Uncle Willie's and traveled south in his patrol vehicle on Long Neck Road and soon spotted a shirtless white male with tattoos walking south on the right shoulder who fit the description of the suspect. *Id.* ¶8. Corporal Mendez pulled in behind the suspect into a darkened grassy area next to Grotto's Pizza. *Id.* Corporal Mendez got out of his vehicle after retrieving his flashlight because it was dark. *Id.* Corporal Mendez identified himself as a police officer and told the suspect to lie down on the ground with his hands behind his back. *Id.* Corporal Mendez hand-cuffed the suspect and got his name (David S. Yarnall) and date of birth to run a warrant check. *Id.* Yarnall was highly agitated and incoherent and Corporal Mendez suspected he was high on some drug like ecstasy or PCP. *Id.*

When Corporal Mendez started back to his police vehicle to run the warrant check, Yarnall got up on his feet. *Id.* ¶9. Corporal Mendez advised SUSCOM that the suspect was resisting

and he needed assistance. Mendez Aff. ¶9. Corporal Mendez turned to secure Yarnall but by this

time Yarnall was walking away towards Long Neck Road.  *Id.*  Corporal Mendez caught up with Yarnall and put his hands on Yarnall's shoulders (the flashlight was still in Mendez' right hand) and directed Yarnall to get back on the ground which he refused to do.  *Id.*  Yarnall started to move away so Mendez latched onto Yarnall's left arm with his left arm.  *Id.*

Corporal Mendez tried to use an arm bar to restrain Yarnall but he continued to pull away and was dragging both of them towards the heavy traffic on Long Neck Road. *Id.* ¶10.  Corporal Mendez tried to get his right foot in front of Yarnall to trip him to the ground but Yarnall did not fall. *Id.*  Repeatedly, Corporal Mendez told Yarnall to stop resisting.  *Id.*  Corporal Mendez warned Yarnall twice that if he did not stop resisting, Corporal Mendez would have to hit him with his flashlight (which was still in Mendez' right hand).  *Id.*

Corporal Mendez decided that he had to increase the use of force to protect both of them from harm because backup police officers had yet to arrive.  *Id.* ¶11.  Corporal Mendez used his flashlight because it was already in his right hand and the most ready weapon of opportunity.  *Id.* To access his ASP baton, Corporal Mendez would have to drop the flashlight and lose the light and possibly lose hold of Yarnall.  *Id.*  Corporal Mendez had pepper spray but he would have to drop his flashlight and reach around to the left side of his duty belt of get it.  *Id.*  Corporal Mendez was also concerned that, because of his proximity to Yarnall, the pepper spray might blow back and disable Mendez.  *Id.*  Corporal Mendez was concerned that either Yarnall would continue to drag Mendez into Long Neck Road or, if Mendez let go, Yarnall would escape and run into the heavy traffic on Long Neck Road and be injured or killed.  *Id.*

After several verbal warnings, Corporal Mendez struck Yarnall once on the right side of his

7

head with the flashlight because Mendez did not believe that a blow to any other part of Yarnall's body would disable him.  Mendez Aff. ¶12.  Yarnall continued to struggle towards Long Neck Road, and Corporal Mendez struck him a second time with the flashlight on the right side of his head.  *Id.* Yarnall stopped resisting and Corporal Mendez escorted him back to the patrol vehicle.  *Id.* Corporal Mendez bent Yarnall over the hood of the patrol vehicle to wait for backup but Yarnall continued to resist.  *Id.*  Yarnall was bleeding from the head so Corporal Mendez called for an ambulance for medical treatment.  *Id.*

At 9:57 p.m., two Millsboro police officers arrived at the scene (Patrolman Roy Lowe and Patrolman First Class Todd Buchert).  *Id.* ¶13.  Corporal Mendez still had Yarnall bent over the hood of his patrol vehicle.  *Id.*  Before Corporal Mendez knew it, Lowe grabbed Yarnall and drive stunned him with his taser. [2]  Yarnall fell to the ground and Corporal Mendez then heard Lowe order Yarnall to lie down on his stomach or "You're gonna get it again." *Id.*

Yarnall stood up and started to flee running across the grassy area towards Grotto's Pizza with Lowe, Buchert, and Corporal Mendez in pursuit.  *Id.* ¶14.  Lowe then used his taser gun to shoot Yarnall in the back with the two barbs and stun him with an electric shock causing him to fall to the ground.  *Id.*

Lowe, Buchert, and Corporal Mendez then held Yarnall on the ground but he continued to resist by trying to lift his arms and legs. Mendez Aff. ¶15.  An ambulance arrived with a Sussex

---

[2]     A taser gun can be used in two ways.  Mendez Aff. Note 1.  The first method involves firing metal barbs into the suspect from a range of up to twenty-one feet. *Id.* The barbs are fired from a compressed nitrogen cartridge.  *Id.*  The barbs are attached to the taser by thin wires through which an electrical current (up to 50,000 volts) flows.  *Id.*  The second method, the drive stun mode, involves the application of the taser directly to the suspect's body after removing the cartridge.  *Id.*  Lowe first used his taser on Yarnall using the drive stun mode.  *Id.*

County paramedic unit. *Id.* They attempted to provide medical treatment, but Yarnall continued to resist and try to pull away even after flexible handcuffs were attached to his ankles. *Id.* When Yarnall still continued to resist, the paramedics called a doctor who authorized the injection of a sedative. *Id.*

Yarnall was taken to Beebe Hospital for medical treatment (ten stitches). *Id.* ¶16. A toxicology report showed the presence of marijuana, cocaine, and PCP. *Id.* After Yarnall's release from the hospital, he was taken to Troop 7 for criminal processing. *Id.*

The State charged Yarnall with two counts of attempted carjacking in the second degree (a class E felony); one count of criminal mischief; and resisting arrest. *Id.* ¶17. He plead guilty to one count of aggravated menacing (a class E felony); one count of menacing; and resisting arrest. *Id.*

## ARGUMENT

A.    The Eleventh Amendment Bars
        Yarnall's Claims For Monetary
        Damages Against The State.

"[T[he Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Kline v. Howard R. Young Correctional Institution*, Civ. No. 06-678-SLR, 2006 WL 3366391, at p.2 (D. Del., Nov. 17, 2006) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)).    Congress has not abrogated the State of Delaware's Eleventh Amendment immunity from suit for any of Yarnall's claims.    "Moreover, the State of Delaware has not waived its sovereign immunity under the Eleventh Amendment." *Kline*, 2006 WL 3366391, at p.2.    Yarnall's claims for monetary damages against the Division of State Police, an agency of the State of Delaware, and Corporal Mendez, in his official capacity, are barred by the Eleventh Amendment. [3]

2.    Neither The State Police Nor Corporal
        Mendez Is A "Person" Subject To Suit
        Under Section 1983.

"A state agency," like the Division of State Police "'is not a person' subject to claims under 42 U.S.C. §1983." *Kline*, 2006 WL 336691, at p.2 (quoting *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)).    "[N]either a State nor its officials acting in their official capacities are 'persons' under Section 1983." *Will*, 491 U.S. 58 at 70.

_____

[3]        "[O]fficial-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).    Yarnall does not seek prospective injunctive relief against Corporal Mendez in his official capacity.

This Court should dismiss Yarnall's Section 1983 claims against the State Police and Corporal Mendez in his official capacity because they are not "persons" who can be sued under Section 1983.

C.     Yarnall Fails To State A Claim For
       A Violation Of The Fifth, Eighth,
       Or Fourteenth Amendment.

"Cases discussing the use of excessive force by state officials may be broken into three distinct categories: first, those cases involving the use of excessive force to effectuate an arrest; second, those cases involving the use of force against an individual in police custody and/or a pretrial detainee; and finally, those cases involving the use of force against a convicted individual." *Metcalf v. Long*, 615 F. Supp. 1108, 1119 (D. Del. 1985) (Longobardi, J.).

"Analysis under the fourth amendment is most appropriate when the complaint is specifically directed to the method of the arrest and seizure of the person." *Id.* at 1120. "[I]f the use of excessive force is alleged to violate the fourth amendment, the fourth amendment reasonableness standard is applied, *i.e.*, balancing the extent of the intrusion against the need for it." *Id.* at 1118.

Yarnall claims that Corporal Mendez violated his rights under the Fifth, Eighth, and Fourteenth Amendment. "[E]ighth amendment protections only apply to convicted individuals and cannot be applied to pretrial detainees." *Metcalf*, 615 F. Supp. at 1120. The substantive due process protections of the Fourteenth Amendment do not apply to Yarnall because he was not under arrest "for some time before the violence occurred." *Id.* Although Yarnall cites the Fifth Amendment, he does not articulate any "procedural due process argument." 615 F. Supp. at 1118 n.12.

11

This Court should dismiss Yarnall's claims for alleged violation of his rights under the Fifth, Eighth, and Fourteenth Amendment for failure to state a claim as a matter of law. Yarnall's complaint against Corporal Mendez in his individual capacity is directed to the method of his arrest and subject to a Fourth Amendment reasonableness standard.

> D.     The Use Of Force By Corporal Mendez
>          Was Objectively Reasonable.

"The Fourth Amendment and its 'reasonableness' standard should be used to analyze all claims which allege that law enforcement officers have used excessive force in the course of an arrest of a free citizen." *Clark v. Condon*, Civ. No. 01-654-SLR, 2002 WL 31102741, at p.2 (D. Del., Sept. 20, 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "The reasonableness test requires careful analysis of the 'facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Clark v. Condon*, 2002 WL 31102741, at p.2 (quoting *Graham*, 490 U.S. at 396 (1989)). "Police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior." *Clark v. Condon*, 2002 WL 31102741, at p.2.

"Consideration of these factors must not include 'the 20/20 vision of hindsight' because it must allow 'for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.'" *Hannah v. City of Dover*, Civ. No. 01-312-SLR, 2005 WL 735882, at p.4 (D. Del., Mar. 30, 2005) (quoting *Graham*, 490 U.S. at 396-97)), *aff'd*, 152 Fed.Appx.

114 (3rd Cir., Oct. 11, 2005).

In *Clark v. Condon*, three Delaware State Troopers tried to arrest a suspect who ran and had

to be tackled and pepper sprayed before he was subdued in a physical struggle and handcuffed.  This

Court held there was no "genuine issue of material fact as to whether the defendants' actions were

unreasonable and in violation of plaintiff's Fourth Amendment rights."  2005 WL 31102741, at p.

3.  First, "one could reasonably conclude that plaintiff was resisting arrest and attempting to evade

arrest by flight." *Id.* Second, "after plaintiff had been tackled by defendant Windish, he continued

to struggle, requiring defendant Condon and Officer Smith to use increasing amounts of force to

effect the arrest."  *Id.*

In *Chambers v. Doe*, 453 F. Supp.2d 858 (D. Del. 2006) (Robinson, C.J.),  the police

executed a search warrant for illegal guns. Plaintiff initially "assumed the surrender/submissive

position by lying down to be handcuffed" but then "began to rise from his submissive position" at

which time the officers allegedly kicked him in the head and back. *Id.* at  867  This Court granted

summary judgment to the police officers. "A reasonable jury could not conclude that the force used

was unreasonable given the conduct of plaintiff in attempting to rise from his submissive position

and the severity of the crime charged."  *Id.*

The degree of force used by Corporal Mendez was objectively reasonable and dictated by

Yarnall's behavior in resisting arrest.  Corporal Mendez used increasing amounts of force to effect

the arrest.  Corporal Mendez was responding to a dangerous situation after Yarnall tried to car-jack

two vehicles by force and intimidation.  There was an immediate threat to public safety if Yarnall

escaped and tried to car-jack another vehicle.  Yarnall was actively resisting arrest and trying to get

away.  Corporal Mendez repeatedly warned Yarnall to stop resisting arrest, and gave Yarnall two

warnings prior to using his flashlight to try to subdue Yarnall. Corporal Mendez was faced with a split-second choice: to let Yarnall go and possibly try to car-jack another vehicle, or be dragged into a busy highway. This escalated use of force in response to the situation as it developed was objectively reasonable under the circumstances.

E.     Corporal Mendez Is Not Responsible
       For The Action Of Patrolman Lowe.

Yarnall alleges that one of the Millsboro Defendants (Patrolman Lowe) used excessive force by using his taser gun against Yarnall. Yarnall also claims that Corporal Mendez is liable for this alleged violation of the Fourth Amendment by not preventing Lowe from using his taser.

"A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2nd Cir. 1988). The other officer, however, must have a "realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." *Id.*

In *Riley v. Newton*, 94 F.3d 632 (11th Cir. 1996), *cert. denied*, 519 U.S. 1114 (1997), a military police officer (Newton) accompanied a deputy sheriff (Glisson) on patrol. Glisson stopped a vehicle driven by a suspected drug dealer. When the driver would not turn off the ignition as directed, Glisson ordered the driver out, placed him on the ground, and handcuffed him. When Glisson returned to his patrol vehicle to turn the siren off and call for a transport unit, he saw Newton straddling a passenger outside the vehicle trying to handcuff him. Newton's gun went off shooting the passenger. Newton claimed it went off because the passenger was resisting arrest; the passenger

14

claimed Newton shot him for no reason.

The Eleventh Circuit held that Glisson was not liable for Newton's use of force on the passenger. Newton "acted without any explicit direction from Glisson. . . Plaintiffs have come forward with no facts from which a jury could find that Glisson failed to take reasonable steps to protect [the passenger] from excessive force." 94 F.3d at 635. Glisson did not "have an indication of the prospective use of excessive force – none occurred until Newton's weapon fired. Because Glisson had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect Lowe, and the obligation to take steps to protect him never arose." *Id.* (citing *O'Neill v. Krzeminski*, 839 F.2d at 11-12)).

Corporal Mendez is not responsible for Patrolman Lowe's use of his taser gun on Yarnall when Lowe first arrived at the scene. Corporal Mendez did not have operational or supervisory control over an officer from another police department dispatched as back-up. The Millsboro Police Department, "the local police force, is an entirely different organization from Troop 7 and would have no employment or agency relationship with defendant Mendez, a Troop 7 member." *Yarnall v. Mendez*, 433 F. Supp.2d 432, 433 (D. Del. 2006) (Robinson, C.J.).

Corporal Mendez did not instruct Patrolman Lowe to use his taser, nor did Corporal Mendez have a realistic opportunity to prevent Lowe from using his taser on Yarnall in the "stun mode" position when Lowe first arrived on the scene. Even assuming, for the sake of argument, that Lowe's initial use of his taser amounted to excessive force, Corporal Mendez did not have a duty to intervene to prevent Lowe's initial use of his taser. [4]

_____

[4] Corporal Mendez reasonably believed that he did not have a duty to intervene when Patrolman Lowe used his taser the second time on Yarnall (firing the two barbs into his back) because at that time Yarnall was running away to escape capture.

F.      Corporal Mendez Is Entitled To
        <u>Qualified Immunity From Suit.</u>

"The doctrine of qualified immunity protects government officials from liability for civil damages 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Neeley v. Samis*, 183 F. Supp.2d 672, 678 (D. Del. 2002) (Robinson, C.J.) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The 'contours of the right [the official is alleged to have violated] must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right.'" *Neeley*, 183 F. Supp.2d at 678 (quoting *Creighton*, 483 U.S. at 648)).

"In a recent decision, the Supreme Court re-emphasized that qualified immunity is designed to protect the official from the litigation itself." *Neeley*, 183 F. Supp.2d at 679 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). "The Court explained that qualified immunity is an immunity from suit, not just a defense to liability, so whether qualified immunity exists must be resolved at the earliest possible stage." *Neeley*, 183 F. Supp.2d at 679. "It then carefully distinguished between the 'reasonableness' inquiry for qualified immunity from the 'reasonableness' inquiry that is part of determining whether excessive force was used, emphasizing that these were two separate inquiries." *Id.* "The Court found that to deny summary judgment any time a material issue of fact remained on an excessive force claim could undermine the goal of qualified immunity to resolve insubstantial claims on summary judgment." 183 F. Supp.2d at 679.

In *Neeley*, State Troopers used a canine to apprehend plaintiff, who was bitten several times. "Undisputed evidence on the record supports the officers' belief that plaintiff had already committed serious crimes, that plaintiff posed an immediate threat to the safety of the officers and the public,

and that plaintiff was actively evading arrest by flight." *Id.* "[T]he Court finds that a reasonable officer in the officers' position would not have known that using a police dog to apprehend plaintiff violated any clearly established constitutional rights, so the officers are entitled to qualified immunity." *Id.*

Corporal Mendez is entitled to qualified immunity from suit. It would not have been clear to a reasonable police officer that using a flashlight to subdue Yarnall was unlawful in the situation Corporal Mendez confronted. A reasonable officer in his position would have believed that striking Yarnall with the only weapon readily available when Yarnall was dragging both of them towards a heavily-trafficked highway was within the bounds of appropriate police responses. It cannot be said that there was a clearly established rule which would prohibit the force used by Corporal Mendez to subdue Yarnall and prevent him from reaching the highway or escaping.

17

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should grant the State of Delaware's motion for summary judgment as a matter of law, deny Yarnall's motion for summary judgment, and dismiss Yarnall's complaint against the State Police and Corporal Mendez with prejudice.

Respectfully submitted,

<u>/s/ W. Michael Tupman, Esquire</u>
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE 19904
(302) 739-7641

Attorney for State of Delaware

Dated: May 3, 2007

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd  day of May, 2007 I filed and served electronically with the

Court the State of Delaware's Opening Brief in Support of Its Motion for Summary Judgment and

Answering Brief to Plaintiff's Motion for Summary Judgment; on that same date, I sent the original,

hard-copy of that brief by first-class U.S. Mail, postage prepaid, to the Clerk of the Court; and on

that same date, I sent two true and correct copies of that brief by first-class U.S. Mail, postage

prepaid, to:


David S. Yarnall
I/M 548973
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947
Plaintiff *pro se*


Bruce C. Herron, Esquire
Akin & Herron, P.A.
1500 Shallcross Avenue, Suite 1-A
Wilmington, DE 19806
Attorney for Defendants Lowe and Buchert


 /s/ W. Michael Tupman, Esquire


I:\TUPMAN\FILES\yarnall.sj.opening.brief.wpd