IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID S. YARNALL, | ) | |
| | ) | |
| Plaintiff, | ) | CONSOLIDATED |
| | ) | |
| v. | ) | CIV. No.: 05-527-SLR |
| | ) | |
| CPL. ANTHONY MENDEZ, DELAWARE | ) | CIV. NO.: 06-501-SLR |
| STATE POLICE - TROOP 7, PTLM | ) | |
| LOWE, UNKNOWN OFFICERS WHO | ) | CIV. NO.: 06-529-SLR |
| RESPONDED TO SCENE OF | ) | |
| MILLSBORO POLICE, AND PFC | ) | |
| BUCHERT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPENING BRIEF OF DEFENDANTS PTLM LOWE AND PFC BUCHERT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**AKIN & HERRON, P.A.**
Bruce C. Herron
Attorney I.D. No.: 2315
1500 Shallcross Avenue
Suite 1-A
Wilmington, Delaware  19806
(302) 427-6987
Attorney for Defendants
Ptlm Lowe and PFC Buchert

Dated: May 3, 2007

## Table of Contents

TABLE OF CITATIONS ........................................3

NATURE AND STAGE OF PROCEEDING ...........................4

SUMMARY OF ARGUMENT ......................................6

STATEMENT OF FACTS .......................................7

ARGUMENT ...............................................11

    I.    SUMMARY JUDGMENT STANDARD

    II.   DEFENDANTS LOWE AND BUCHERT ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY DID NOT USE EXCESSIVE FORCE WHILE ASSISTING CPL. MENDEZ IN HIS ARREST OF PLAINTIFF

    III.  ALTERNATIVELY, THE DOCTRINE OF QUALIFIED IMMUNITY PROTECTS OFFICER LOWE AND OFFICER BUCHERT FROM LIABILITY BECAUSE REASONABLE OFFICERS IN THEIR POSITION WOULD NOT HAVE KNOWN THAT THEIR CONDUCT VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT

    IV.  DEFENDANT BUCHERT DID NOT FAIL TO ACT TO PREVENT THE USE OF EXCESSIVE FORCE

CONCLUSION ..............................................19

## Table of Citations

**CASES**

Anderson v. Liberty Lobby, Inc. ...........................12, 16
477 U.S. 242 (1986)

Celotex Corp v. Catrett ...................................11
477 U.S. 317 (1986)

Graham v. Connor .........................................13
490 U.S. 386 (1989)

Grant v. City of Pittsburgh ..............................16
98 F. 3d 116 (3d Cir. 1996)

Gruver v. Borough of Carlisle ............................15
2006 WL 1410816 (M.D. Pa.)

Matsushita Elect, Indu. Co. V. Zenith Radio Corp. ........11
475 U.S. 574 (1986)

Neeley v. Samis ..........................................11
183 F. Supp 2d 672 (D. Del. 2002)

Priester v. Rivera Beach .................................17
208 F.3d 919 (11th Cir. 2000)

Saucier v. Katz ..........................................16
533 U.S. 194 (2001)

Turner v. Schering-Plough Corp. ..........................11
901 F. 2d 335 (3d Cir. 1990)

Turner v. Scott ..........................................18
11 F. 3d 425 (6th Cir. 1997)

Young v. Quinlan .........................................11
960 F. 2d 351 (3d Cir. 1992)

**STATUTES**

11 Del. C. § 1257 .......................................10

F.R.C.P. 56 (c) .........................................11

3

## NATURE AND STAGE OF PROCEEDING

Plaintiff David S. Yarnall filed the initial Complaint in this action on July 7, 2005.  (D.I. 1).  Plaintiff named as defendants Cpl. Mendez, Delaware State Police – Troop 7 and the Millsboro Police Department.  Defendant Millsboro Police Department moved to dismiss the Complaint for failure to state a claim upon which relief could be granted on December 7, 2005. (D.I. 21).  Cpl. Mendez and the Delaware State Police filed an Answer to the Complaint (D.I. 23) on January 3, 2006.

The Court granted defendant Millsboro Police Department's Motion to Dismiss on June 9, 2006 (D.I. 30).  Plaintiff subsequently filed an Amended Complaint (D.I. 36) and two additional Complaints at 06-501 SLR and 06-529 SLR.  The new Complaints added as additional defendants Ptlm Lowe and PFC Buchert of the Millsboro Police Department, as well as "Unknown Officers who responded to scene of Millsboro Police."  Like plaintiff's original Complaint, the new Complaints contained allegations of excessive force arising from an incident next to Grotto Pizza in Sussex County on May 11, 2005.

On September 26, 2006 the Court consolidated the three separate lawsuits for all purposes.  (D.I. 49).  Defendant Ptlm Lowe filed an Answer and Affirmative Defenses on December 4, 2006.  (D.I. 59).  PFC Buchert also filed an Answer and Affirmative Defenses on December 4, 2006.  (D.I. 60).

4

On September 20, 2006 the Court ordered that "when plaintiff learns the identities of the Unknown Officers who responded to scene of Millsboro Police he shall immediately move the Court for an order directing amendment of the caption and service of the complaint upon them." (D.I. 50). Plaintiff has not moved for such an Order.

On January 5, 2007 the Court granted Defendants Lowe and Buchert's Motion for Clarification and ordered (1) that discovery be completed by April 4, 2007 and (2) that summary judgment motions be filed on or before May 4, 2007. (D.I. 85). Defendants Lowe and Buchert moved for summary judgment on May 3, 2007. This is the Opening Brief of Defendants Ptlm Lowe and PFC Buchert in Support of their Motion for Summary Judgment.

SUMMARY OF ARGUMENT

I.    SUMMARY JUDGMENT STANDARD

II.   DEFENDANTS LOWE AND BUCHERT ARE ENTITLED TO SUMMARY
      JUDGMENT BECAUSE THEY DID NOT USE EXCESSIVE FORCE WHILE
      ASSISTING CPL. MENDEZ IN HIS ARREST OF PLAINTIFF

III.  ALTERNATIVELY, THE DOCTRINE OF QUALIFIED IMMUNITY
      PROTECTS OFFICER LOWE AND OFFICER BUCHERT FROM
      LIABILITY BECAUSE REASONABLE OFFICERS IN THEIR POSITION
      WOULD NOT HAVE KNOWN THAT THEIR CONDUCT VIOLATED A
      CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT

IV.   DEFENDANT BUCHERT DID NOT FAIL TO ACT TO PREVENT THE
      USE OF EXCESSIVE FORCE

## STATEMENT OF FACTS

Millsboro Police Officers Stephen C. Lowe and Todd Buchert were on duty in a police vehicle on the night of May 11, 2005. (Affidavit of Officer Stephen C. Lowe, A-1; Affidavit of Officer Todd Buchert A-5).[1]  At approximately 9:37 p.m. they heard a Sussex Emergency Operation Center (Suscom) dispatch by radio directing all available police officers to respond to Grotto's Pizza on Long Neck Road regarding a Delaware State Police Troop 7 Officer needing assistance with a fighting and resisting subject. (Lowe Aff. A-2).  They responded immediately and arrived at the scene twenty minutes later at 9:57 p.m.  (Buchert Aff. A-6).

Lowe and Buchert observed Delaware State Police Officer Cpl. Anthony Mendez struggling with a white male.  It appeared the white male (later identified as plaintiff David Yarnall) was trying to rise up against Cpl. Mendez despite attempts to restrain him on the hood of the police vehicle.  (Lowe Aff. A-2). They also observed that Cpl. Mendez was sweating profusely and appeared to be out of breath.  (Lowe Aff. A-2).

---

[1] References to the Appendix to the Opening Brief of Defendants Ptlm Lowe and PFC Buchert in Support of their Motion for Summary Judgment will be to "A- ."

They ran from their vehicle approximately 35 yards to Officer Mendez' location.  (Buchert Aff. A-6).  Officer Lowe applied his Police Department-issued taser to Yarnall's back in order to stop his resistance to Cpl. Mendez. [2]   The length of the tase was no longer than 2-3 seconds.  Yarnall immediately fell to the ground, then rose to his knees.  (Lowe Aff. A-2).

Officer Lowe told Yarnall to get on his stomach.  Instead of obeying Officer Lowe's command, Yarnall suddenly rose to his feet and attempted to flee by running across a grassy area toward Grotto's Pizza.  (Lowe Aff. A-2-3).

Officers Lowe and Buchert pursued Yarnall on foot.  (Buchert Aff. A- ).  Officer Lowe attempted to drive stun Yarnall again but was unable to make contact with the taser while running. Lowe replaced the shooting cartridge on the taser as Officer Buchert and another Delaware State Police Officer caught up to Yarnall.  Lowe fired the taser leads into Yarnall's back between the shoulder blades.  The length of the tase was approximately three seconds.  Yarnall fell to the ground but continued to resist the officers' attempts to restrain him.  (Lowe Aff. A-3).

---

[2]   A taser application is designed to temporarily disable a resisting subject (without causing physical harm) through application of electrical current.  The taser may be applied directly to the suspect's body.  This is referred to as a drive stun.  A taser gun can also be used by firing metal barbs into the suspect from a range of up to 21 feet.  The barbs are fired from a compressed nitrogen cartridge and are attached to the taser by thin wires through which an electrical current flows. (Aff. of Officer Lowe, A-2).

Yarnall resisted by attempting to lift his arms and legs off the ground as Officer Lowe, Officer Buchert, Cpl. Mendez and another Delaware State Police Officer tried to hold him on the ground. (Lowe Aff. A-3).  Due to Yarnall's continued aggressive behavior, Cpl. Mendez did not believe he could be safely loaded into the back of an ambulance or a police car.  Mendez therefore called Suscom and requested that a Dewey Beach Police Van be brought to the scene.  (Lowe Aff. A-3).

As Yarnall continued his physical struggle against the officers, Officer Lowe applied the taser directly to Yarnall's back.  The length of the tase was approximately three seconds. (Lowe Aff. A-3).  Lowe then restrained Yarnall's feet with flexible cuffs so that he could not kick the officers.

An ambulance arrived at the scene along with a Sussex County Paramedic Unit.  Yarnall continued to resist and try to pull away as they attempted to provide medical treatment.  (Lowe Aff. A-3-4.)  Yarnall was loaded into the Dewey Beach Police Department Van with the assistance of several additional officers and medical personnel.  The van left the scene with Yarnall in the custody of Cpl. Mendez.  (Lowe Aff. A-4).

During treatment at Beebe Medical Center, Yarnall admitted to consuming at least six alcoholic drinks that night.  He also admitted to using PCP, cocaine and marijuana.  (May 11, 2005 Beebe Medical Center ER Record, A-8).  Yarnall subsequently pled

guilty to Resisting Arrest in violation of 11 <u>Del</u>. <u>C</u>. § 1257. (Lowe Aff. A-4).

## ARGUMENT

### 1.   SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The moving party bears the burden of proving there is no genuine issue for trial. Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).

Once the moving party points out the absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof, Celotex Corp v. Catrett, 477 U.S. 317, 325 (1986), the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue." Neeley v. Samis, 183 F.Supp 2d 672, 678 (D. Del. 2002).

11

Not every alleged factual dispute will defeat an otherwise properly supported motion for summary judgment.  The dispute must relate to a genuine issue of material fact.  A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

II.  **DEFENDANTS LOWE AND BUCHERT ARE ENTITLED TO SUMMARY
     JUDGMENT BECAUSE THEY DID NOT USE EXCESSIVE FORCE WHILE
     ASSISTING CPL. MENDEZ IN HIS ARREST OF PLAINTIFF.**

An objective reasonableness test is used to evaluate
excessive force claims under the Fourth Amendment.  Graham v.
Connor, 490 U.S. 386 (1989).  The objective reasonableness of the
officers' actions is determined by the "facts and circumstances
of [the] particular case, including the severity of the crime at
issue, whether the suspect poses an immediate threat to the
safety of the officers or others, and whether he is actively
resisting arrest or attempting to evade arrest by flight."
Graham, 490 U.S. at 396.  "[A] particular use of force must be
judged from the perspective of a reasonable officer on the scene,
rather than with the 20/20 vision of hindsight."  Id.

Moreover, the reasonableness determination must allow "for
the fact that police officers are often forced to make split-
second judgments - in circumstances that are tense, uncertain and
rapidly evolving - about the amount of force that is necessary in
a particular situation."  Id. at 396-397.  The Supreme Court has
observed that "not every push or shove, even if it may later seem
unnecessary in the peace of a judge's chambers, violates the
Fourth Amendment."  Graham, 490 U.S. at 396.

13

Officers Lowe and Buchert heard a Suscom dispatch by radio directing that any available police officer respond to a Delaware State Trooper needing assistance with a fighting and resisting subject. Although they drove immediately to the designated location they did not arrive until twenty minutes later. They observed a lone Delaware State Police Officer (defendant Cpl. Mendez) struggling with plaintiff. It appeared that plaintiff was trying to rise up against Cpl. Mendez' attempts to restrain him on the hood of the police vehicle. Lowe and Buchert also observed that Cpl. Mendez was sweating profusely and appeared to be out of breath.

Based on the information conveyed by Suscom and the observations made at the scene, reasonable police officers would have believed that plaintiff was actively resisting arrest and that he posed an immediate threat to the safety of Cpl. Mendez. Under the circumstances, Officer Lowe's application of the taser (designed to temporarily disable a resisting subject) to Yarnall's back was objectively reasonable. The tase lasted only 2-3 seconds.

Although Yarnall initially fell to the ground he continued to resist arrest by disregarding Officer Lowe's instruction to "get on his stomach." (Lowe Aff. A-2-3). Yarnall suddenly rose to his feet and fled.

14

As Yarnall continued to actively evade arrest by flight Officer Lowe fired the taser leads into Yarnall's back. Yarnall fell to the ground as Officer Buchert and another Delaware State Police Officer made contact with him. Yarnall continued to resist the officers' lawful commands by attempting to lift his arms and legs. Lowe applied the taser directly to Yarnall's back for approximately three seconds.

Officer Lowe's use of the taser to restrain plaintiff's unlawful resistance was objectively reasonable . See Gruver v. Borough of Carlisle, 2006 WL 1410816 (M.D. Pa.) (A-9) (Finding officers' use of force, including application of taser gun, objectively reasonable where officers attempted to restrain plaintiff to protect others and themselves and where force used was consistent with level of plaintiff's resistance and was not gratuitous).

III. **ALTERNATIVELY, THE DOCTRINE OF QUALIFIED IMMUNITY PROTECTS OFFICER LOWE AND OFFICER BUCHERT FROM LIABILITY BECAUSE REASONABLE OFFICERS IN DEFENDANTS' POSITION WOULD NOT HAVE KNOWN THAT THEIR CONDUCT VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT**

Government officials are protected from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The "contours of the right [the official is alleged to have violated] must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. Once a government official raises the defense of qualified immunity the Court must determine "whether a reasonable public official would know his or her specific conduct violated clearly established rights." Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir. 1996). (emphasis in original).

The Supreme Court has ruled that the "reasonableness" inquiry for qualified immunity is separate from the "reasonableness" inquiry for determining whether excessive force was used. Saucier v. Katz, 533 U.S. 194, 204 (2001). Qualified immunity may apply even if there is a material issue of fact on an excessive force claim. Id. The Court explained:

> An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the

16

law requires is reasonable, however, the officer is entitled to the immunity defense...Qualified immunity operates...to protect officers from the sometimes "hazy border between excessive and acceptable force." <u>Saucier</u>, 533 U.S. at 205-206 (quoting <u>Priester v. Rivera Beach</u>, 208 F.3d 919, 926-927 (11th Cir. 2000.)

For the reasons set forth in Argument II above, a reasonable officer in Officer Lowe's position would not have known that using a taser in the effort to apprehend plaintiff violated any clearly established constitutional right.  Officer Lowe is therefore entitled to qualified immunity.  Similarly, a reasonable police officer in Officer Buchert's position would have believed the use of force was lawful.  He is also entitled to qualified immunity.

IV.   **DEFENDANT OFFICER BUCHERT DID NOT FAIL TO ACT TO PREVENT THE USE OF EXCESSIVE FORCE**

The gist of plaintiff's claim against Officer Buchert is that he failed to act to prevent the use of excessive force by Officer Lowe.  Officer Buchert is entitled to summary judgment because Officer Lowe did not use excessive force.  See Argument II above.

A police officer may be held liable for failure to act to prevent the use of excessive force where: "(1) the officer observed or had reason to know that excessive force would be or was being used; and (2) the officer had both the opportunity and the means to prevent the harm from occurring."  Turner v. Scott, 11 F.3d 425, 429 (6th Cir. 1997).  There is no evidence upon which a reasonable jury could find that Officer Lowe knew that excessive force would be or was being used.  Similarly, there is no evidence that Officer Buchert had the opportunity and the means to prevent the harm from occurring.

18

## CONCLUSION

For the foregoing reasons, defendants Ptlm Lowe and PFC Buchert respectfully request that summary judgment be entered on their behalf.


AKIN & HERRON, P.A.

/s/ Bruce C. Herron
Bruce C. Herron
Attorney I.D. No.: 2315
1500 Shallcross Avenue
Suite 1-A
Wilmington, Delaware  19806
(302) 427-6987
Attorney for Defendants
Ptlm Lowe and PFC Buchert


Dated: May 3, 2007


H:\tmw5\data\files\Docs\3651.038\BRIE\7490.WPD

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DAVID S. YARNALL,                    )
                                     )
        Plaintiff,                   )    CONSOLIDATED
                                     )
        v.                           )    CIV. No.: 05-527-SLR
                                     )
CPL. ANTHONY MENDEZ, DELAWARE )          CIV. NO.: 06-501-SLR
STATE POLICE - TROOP 7, PTLM )
LOWE, UNKNOWN OFFICERS WHO    )          CIV. NO.: 06-529-SLR
RESPONDED TO SCENE OF         )
MILLSBORO POLICE, AND PFC     )
BUCHERT,                      )
                              )
        Defendants.           )

## NOTICE OF SERVICE

        I **HEREBY CERTIFY** that on this 3rd day of May, 2007, a

copy of **DEFENDANTS PTLM LOWE'S AND PFC BUCHERT'S OPENING BRIEF IN**

**SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was mailed first

class to the following party:

David S. Yarnall
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

and was electronically filed with the Clerk of the Court using

CM/ECF which will send notifications of such filing(s) to counsel

listed below:


Michael W. Tupman, Esquire
Department of Justice
102 West Water Street, Third Floor
Dover, DE 19904-6750

AKIN & HERRON, P.A.

/s/ Bruce C. Herron
Bruce C. Herron
Attorney I.D. No.: 2315
1500 Shallcross Avenue
Suite 1-A
Wilmington, DE 19806
(302) 427-6987
Attorneys for Defendants
Ptlm Lowe and PFC Buchert

H:\tmw5\data\files\Docs\3651.038\NOS\7528.WPD