IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID S. YARNALL, | ) | |
| | ) | |
| Plaintiff, | ) | CONSOLIDATED |
| | ) | |
| v. | ) | CIV. No.: 05-527-SLR |
| | ) | |
| CPL. ANTHONY MENDEZ, DELAWARE STATE POLICE - TROOP 7, PTLM LOWE, UNKNOWN OFFICERS WHO RESPONDED TO SCENE OF MILLSBORO POLICE, AND PFC BUCHERT, | ) ) ) ) ) ) ) | CIV. NO.: 06-501-SLR CIV. NO.: 06-529-SLR |
| Defendants. | ) | |

### APPENDIX TO OPENING BRIEF OF DEFENDANTS PTLM LOWE AND PFC BUCHERT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

AKIN & HERRON, P.A.

/s/ Bruce C. Herron
Bruce C. Herron
Attorney I.D. No.: 2315
1500 Shallcross Avenue
Suite 1-A
Wilmington, DE 19806
(302) 427-6987
Attorneys for Defendants
Ptlm Lowe and PFC Buchert

Dated: May 3, 2007

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Affidavit of Officer Stephen C. Lowe | A-1 |
| Affidavit of Officer Todd Buchert | A-5 |
| May 11, 2005 Beebe Medical Center ER Record | A-8 |
| <u>Gruver v. Borough of Carlisle</u>, 2006 WL 1410816 (M.D. Pa.) | A-9 |

H:\tmw5\data\files\Docs\3651.038\APPX\7515.wpd

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID S. YARNALL, | ) | |
| Plaintiff, | ) ) | CONSOLIDATED |
| v. | ) ) | CIV. No.: 05-527-SLR |
| CPL. ANTHONY MENDEZ, DELAWARE STATE POLICE – TROOP 7, PTLM LOWE, UNKNOWN OFFICERS WHO RESPONDED TO SCENE OF MILLSBORO POLICE, AND PFC BUCHERT, | ) ) ) ) ) ) ) | CIV. NO.: 06-501-SLR CIV. NO.: 06-529-SLR |
| Defendants. | ) | |

## AFFIDAVIT OF OFFICER STEPHEN C. LOWE

BE IT REMEMBERED on this _1st_ day of _MAY_, 2007, Officer Stephen C. Lowe did come before me, a Notary Public, and did depose and say the following:

1. I am a Patrolman First Class with the Millsboro Police Department. I have been a Millsboro Police Officer since _FEB. 2005_.

2. I am a named defendant in the above action. I have personal knowledge of all of the facts set forth in this Affidavit.

3. On the night of May 11, 2005 at approximately 9:37 p.m., I was on duty riding as a passenger in Millsboro Police Officer Todd Buchert's Police vehicle. We heard a Sussex Emergency Operation Center (SUSCOM) dispatch by radio directing

A-1

any available police officer to respond to Grotto's Pizza on Long Neck Road regarding a Delaware State Police Troop 7 Officer needing assistance with a fighting and resisting subject.

4. Officer Buchert drove immediately to the location on Long Neck Road. When we arrived at the scene at approximately 9:57 p.m., I observed Delaware State Police Officer Anthony Mendez struggling with a white male. It appeared the white male (later identified as David Yarnall) was trying to rise up against Cpl. Mendez' attempts to restrain him on the hood of the police vehicle. I also observed that Cpl. Mendez was sweating profusely and appeared to be out of breath.

5. I ran from our vehicle approximately thirty-five yards to Officer Mendez' location. I applied my Department issued taser [1] to Yarnall's back in order to stop his resistance to Cpl. Mendez. The length of the tase was no longer than 2-3 seconds. Yarnall immediately fell to the ground, then rose to his knees. I told Yarnall to get on his stomach. Instead of obeying my

---

[1] A taser application is designed to temporarily disable a resisting subject (without causing physical harm) through application of electrical current. The taser may be applied directly to the suspect's body. This is referred to as a drive stun. A taser gun can also be used by firing metal barbs into the suspect from a range of up to 21 feet. The barbs are fired from a compressed nitrogen cartridge and are attached to the taser by thin wires through which an electrical current flows.

A-2

command Yarnall suddenly rose to his feet and attempted to flee by running across a grassy area toward Grotto's Pizza.

6. I pursued Yarnall on foot and attempted to drive stun him again but was unable to make contact with the taser while running. I replaced the shooting cartridge on the taser as PFC Buchert and another Delaware State Police Officer caught up to Yarnall. I then fired the taser leads into Yarnall's back between the shoulder blades. The length of the tase was approximately 3 seconds. Yarnall fell to the ground. Buchert, Mendez, another Delaware State Police Officer and myself held Yarnall on the ground but he continued to resist by attempting to lift his arms and legs. Due to Yarnall's continued aggressive behavior, Cpl. Mendez did not believe he could be safely loaded into the back an ambulance or a police car. Mendez therefore called SUSCOM and requested that a Dewey Beach Police van be brought to the scene.

7. As Yarnall continued his physical struggle against the officers I applied the taser directly to his back again. The length of the tase was approximately 3 seconds. I then restrained his feet with flexible cuffs so that he could not kick the officers. An ambulance arrived at the scene along with a Sussex County Paramedic Unit. Yarnall continued to resist and tried to pull away as they attempted to provide medical

A-3

treatment.

8. Yarnall was loaded into the Dewey Beach Police Department Van with the assistance of several additional officers and medical personnel. The van left the scene with Yarnall in the custody of Cpl. Mendez.

9. Yarnall subsequently pled guilty to resisting arrest in violation of 11 Del. C. § 1257.

PFC Stephen C. Lowe

SWORN TO AND SUBSCRIBED BEFORE ME, a Notary Public, on the day and year aforesaid. 5/2/2007

Notary Public

FAYE LYNN LINGO

MY COMMISSION EXPIRES
FEBRUARY 9, 2008

H:\tmw5\data\filcn\Docs\3651.038\APF\7444.wpd

A-4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID S. YARNALL, ) | |
| ) | |
| Plaintiff, ) | CONSOLIDATED |
| ) | |
| v. ) | CIV. No.: 05-527-SLR |
| ) | |
| CPL. ANTHONY MENDEZ, DELAWARE ) | CIV. NO.: 06-501-SLR |
| STATE POLICE - TROOP 7, PTLM ) | |
| LOWE, UNKNOWN OFFICERS WHO ) | CIV. NO.: 06-529-SLR |
| RESPONDED TO SCENE OF ) | |
| MILLSBORO POLICE, AND PFC ) | |
| BUCHERT, ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF OFFICER TODD BUCHERT

BE IT REMEMBERED on this 1st day of May, 2007, Officer Todd Buchert, did come before me, a Notary Public, and did depose and say the following:

1. I am a Trooper with the Delaware State Police. I have been a Delaware State Police Officer since September, 2006. On May 11, 2005 I was employed as a Patrolman First Class with the Millsboro Police Department.

2. I am a named defendant in the above action. I have personal knowledge of all of the facts set forth in this Affidavit.

3. On the night of May 11, 2005, at approximately 9:37 p.m., I was on patrol in a Millsboro Police Department vehicle with Millsboro Police Officer Stephen Lowe. We heard a Sussex Emergency Operation Center (SUSCOM) dispatch by radio directing

A-5

all available police officers to respond to Grotto's Pizza on Long Neck Road regarding a Delaware State Police Troop 7 Officer needing assistance with a fighting and resisting subject.

4. We drove immediately to the location on Long Neck Road. When we arrived at the scene at approximately 9:57 p.m., I observed Delaware State Police Officer Anthony Mendez struggling with a white male. Cpl. Mendez was sweating and appeared to be out of breath. It appeared the white male (later identified as David Yarnall) was trying to rise up against Cpl. Mendez' attempts to restrain him on the hood of the police vehicle.

5. We ran from our vehicle approximately thirty-five yards to Officer Mendez' location. Officer Lowe drive stunned the white male with his Department-issued taser in order to stop the resistance against Cpl. Mendez. The length of the tase was approximately 2-3 seconds. Yarnall fell to the ground but then made it to his feet and began to run away.

6. We pursued Yarnall on foot. I caught Yarnall with the assistance of another Delaware State Police Officer. Officer Lowe fired taser leads into Yarnall's back. Yarnall continued to struggle against the officers' attempts to restrain him. Yarnall resisted by attempting to lift his arms and legs off the ground.

A-6

7. As Yarnall continued his physical struggle against the officers, Officers Lowe again applied the taser directly to Yarnall's back. Numerous officers were required to hold Yarnall on the ground until medical personnel arrived and gave him a sedative.

_____
Officer Todd Buchert

**SWORN TO AND SUBSCRIBED BEFORE ME**, a Notary Public, on the day and year aforesaid.

_____
Notary Public

Kim D. Griffin
Notary Public
State of Delaware
Commission Expires 12/3/08

H:\tmw5\data\files\Docs\3651.038\AFF\7449.wpd

A-7



## BEEBE MEDICAL CENTER
## EMERGENCY RECORD

**Name:** Yarnell, David
Age: M35  Wt: 61.2 Kg (est.)
MedRec: 990037092
AcctNum: 25571555

---— TRIAGE DATA ———

**Complaint:** Psychiatric/Overdose

**Triage Time:** May 11 2005 22:57  **Age:** 35  Male  **Kg Weight:**
**Source:** Paramedic                                   **Physicians:**
**By:** Stretcher
**Urgency:** ESI 2                                       Lewes Er Md
**Room:**           ED 01

**Vital Signs:**
BP:123/58          P:102     R:22     T:97     Pn:10     Sat:98/wo

---

**ADDITIONAL TRIAGE May 11 2005 22:57**
  PATIENT (22:57 AMB): NAME: David Yarnell, DOB: Oct 03, 1969, TIME OF GREET: Wed, May
    11 2005 22:49, LANGUAGE: English, DV/ABUSE SCREENING: NO APPARENT
    DOMESTIC VIOLENCE/NEGLECT, MEDICAL RECORD NUMBER: 990037092,
    ACCOUNT NUMBER: 25571555, IBEX NUMBER: 20050511225725ADT.
  IMMUNIZATIONS (May 12 1:42 AMB): Last tetanus shot received less than 5 years ago.
  **TREATMENTS PRIOR TO ARRIVAL (23:02 AMB): Gauge: 20, Site: R arm, Other Tx PTA: Saline**
    **lock.**
  GENERAL ASSESSMENT: (22:57 AMB): Pt brought by EMS and police. Per EMS pt jumped onto a
    stopped car then ran into Grottos to get a beer. Pt in handcuffs and zipties to ankles and
    strapped on a board. Pt had been uncooperative with EMS and police prior to arrival. Pt admits
    to at least 6 alcoholic drinks tonight. Pt has a lac to rt parietal and above rt ear. Pt has 2
    puncture wounds to upper back. Pt admits to using PCP, cocaine and marijuana.
  PROVIDERS (22:57 AMB): PRIMARY NURSE: Ann Bollinger, RN.

## VITAL SIGNS
  VITAL SIGNS (22:57 AMB): BP: 123/58, Pulse: 102, Resp: 22, Temp: 97, Pain: 10, O2 sat: 98/wo.
    (23:03 AMB): BP: 113/68, Pulse: 98, Resp: 20, O2 sat: 98/.

## KNOWN ALLERGIES
  nkda.

## HPI MENTAL STATUS CHANGES (May 11 2005 23:03 DD)
  **CHIEF COMPLAINT: Patient presents for the evaluation of mental status changes, drug use.**
  HISTORIAN: History obtained from patient, EMS, police.
  **TIME COURSE:** Time of onset is unknown, Onset was apparently sometime tonight. Complaint is
    persistent, constant.
  CIRCUMSTANCES: Recent drug use, Recent alchohol use.
  QUALITY: GCS: 14, agitation.
  SEVERITY: Maximum severity is severe, Currently symptoms are moderate.
  EXACERBATED BY: Patient's condition exacerbated by nothing.
  RELIEVED BY: Patient's condition relieved by nothing.
  NOTES: patient given Versed 5 mg IM by medics enroute to hospital.

## HISTORY

A-8

Not Reported in F.Supp.2d, 2006 WL 1410816 (M.D.Pa.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.
Thomas L. GRUVER, Plaintiff,
v.
BOROUGH OF CARLISLE, et al., Defendants.
No. 4:CV 05-1206.
May 19, 2006.

Sally J. Winder, Shippensburg, PA, for Plaintiff.
David J. MacMain, Kynya V. Jacobus, Janelle E. Fulton, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, for Defendants.

### *MEMORANDUM AND ORDER*

JOHN E. JONES, III, District Judge.

### **THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

*1 Currently pending before the Court is Defendants' Borough of Carlisle, Sergeant Brent Greist, Officer Alan R. Mace and Officer Patrick O'Leary's Motion for Summary Judgment ("the Motion")(doc. 15) filed on March 1, 2006.

For the following reasons, the Motion (doc. 15) will be granted in its entirety.

### *PROCEDURAL HISTORY:*

Plaintiff Thomas L. Gruver ("Plaintiff" or "Gruver") initiated this action by filing a complaint (doc. 1) with this Court on June 16, 2005. Thereafter, on March 1, 2006, the Defendants, Borough of Carlisle, Sergeant Greist, Officer Mace and Officer O'Leary (collectively "Defendants") filed the instant Motion. (Rec.Doc. 15). The Motion has been fully briefed by the parties and is therefore ripe for our review.

### *STANDARD OF REVIEW:*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Turner v. Schering-Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." *Young v. Quinlan,* 960 F.2d 351, 357 (3d Cir.1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. FED.R.CIV.P. 56(e). The

A-9

United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. *Celotex Corp., 477 U.S. at 322-23.*

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Pastore v.. Bell Tel. Co. of Pa.,* 24 F.3d 508, 511 (3d Cir.1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912 (1993) (citations omitted).

**\*2** Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material." *Id.* at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## STATEMENT OF RELEVANT FACTS:

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, Plaintiff, in our analysis of the pending Motion.

The instant action arises out of a set of circumstances surrounding a hypoglycemic attack suffered by the Plaintiff, while he was driving home from work on June 17, 2003. The Plaintiff is employed as an auto body mechanic and had been a diabetic for approximately 14 years at the time this incident occurred.

On June 17, 2003, at approximately 5 p.m., Officer Greist was in the Sheetz convenience store when he received a verbal report from a witness who had seen Plaintiff driving erratically [FN1] on Route 11 and that Plaintiff had since parked in the Sheetz parking lot. (Rec. Doc. 15 at 5; Rec. Doc. 19 at 4). Upon receiving this verbal account, Officer Greist approached the Plaintiff to assess what, if any, problem Plaintiff was experiencing. Defendant alleges that the Plaintiff did not respond coherently or at all to Officer Greist's repeated questions and requests for information. (Rec. Doc. 15 at 6; Rec. Doc. 19 at 4-5). Plaintiff alleges that he was not totally incoherent when Officer Greist spoke to him. Plaintiff further alleges that Officer Greist asked Plaintiff if he was okay and Plaintiff responded that there was "no problem." Officer Greist requested that Plaintiff produce identification but that Plaintiff was unable to or did not comply with the request. Plaintiff alleges that he attempted to produce identification. Defendants allege that Officer Greist asked Plaintiff if he had taken any drugs or alcohol and Plaintiff responded, "both." Plaintiff does not specifically deny that this question and answer took place. (Rec. Doc. 15 at 6; Rec. Doc. 19 at 4-5).

> FN1. Defendants use the word "erratically" in their statement of undisputed material facts. Plaintiff alleges that the witness did not use the word "erratically" but told Officer Greist that the Plaintiff had weaved several times on the highway and was slumped over the wheel of his vehicle where he had parked it in the Sheetz lot. We think the word "erratically" can be used to describe a vehicle weaving across the highway, therefore we will adopt the Defendant's word choice in our statement of facts.

At some point during the exchange, Plaintiff got out of his vehicle and began to walk towards the Sheetz convenience store, in a disoriented fashion. At this point, Officer Greist attempted to detain the Plaintiff and safeguard him from the traffic in the parking lot. Plaintiff alleges that he could have entered the Sheetz convenience store without wandering into the path of oncoming traffic. Plaintiff did not respond to Officer Greist's verbal commands and physically resisted Officer Greist's efforts to

physically pull him back toward his car and away from the flow of traffic, forcing Officer Greist to attempt to physically subdue the Plaintiff. (Rec. Doc. 15 at 6-7; Rec. Doc. 19 at 5-6).

**\*3** Plaintiff alleges that Officer Greist took physical control over the Plaintiff by knocking him to the ground, handcuffing his right wrist and pinning him down with his own body. (Rec. Doc. 19 at 6). Defendants allege that Officer Greist could not subdue Plaintiff on his own and therefore called for backup police assistance. (Rec. Doc. 15 at 7). Officer Mace responded to the dispatch call first, followed by Officer O'Leary, to assist Officer Greist. Plaintiff alleges that when the Officers Mace and O'Leary responded, Officer Greist was not struggling with Plaintiff, but rather he was down on Plaintiff's back, pinning him to the ground and waiting for the requested backup officers. (Rec. Doc. 19 at 6). Defendants allege that Officer Greist was still struggling with Plaintiff when the backup officers arrived. (Rec. Doc. 15 at 7). Upon his arrival, Officer Mace took Plaintiff's left wrist and completed handcuffing him. (Rec. Doc. 19 at 6).

After failing to heed the Officers' repeated commands, warnings and instructions to cease resistance, Officer Mace tased Plaintiff with his **Taser** stun gun three times. (Rec. Doc. 15 at 8; Rec. Doc. 19 at 6). In his deposition, Officer Mace stated that the length of the tase was no longer than five seconds as per the design and setting of the manufacturer. (DT of Officer Mace at 24-27). Officer Mace testified that the estimated that the first tase was no more than two seconds, the second was approximately three seconds and the third time was close to a full five seconds. (DT of Officer Mace at 72-74).

After Plaintiff was secured in a patrol car, the Officers noticed a medical alert tag on the necklace Plaintiff was wearing and realized Plaintiff was a diabetic experiencing a hypoglycemic attack. (Rec. Doc. 15 at 8; Rec. Doc. 19 at 7). Officer Mace then retrieved water and sugar from the Sheetz convenience store and gave them to Plaintiff, who ingested the sugar and drank the water, causing him to become calm and to recover almost instantly from his hypoglycemic attack. (Rec. Doc. 15 at 9; Rec. Doc. 19 at 7).

Plaintiff did not want to go to the Carlisle Regional Medical Center and did not want medical treatment. Plaintiff was, however, transported to the hospital via ambulance, treated and released. At the hospital, Plaintiff denied he was in pain. (Rec. Doc. 15 at 9; Rec. Doc. 19 at 7). As a result of this incident, Plaintiff, an auto body mechanic, did not miss any time from work. (Rec. Doc. 15 at 10; Rec. Doc. 19 at 8).

We note also that the parties have submitted a videotaped record of the aforementioned incident for this Court's review. The Court has viewed the said videotape prior to rendering this ruling.

### DISCUSSION:

In the complaint (doc. 1), Plaintiff asserts three claims against the Defendants: Violation of Constitutional Rights under 42 U.S.C. § 1983 (Count I); Assault and Battery (Count II); and False Imprisonment (Count III). Plaintiff's claims against the Defendant Officers are asserted against them as in their official and individual capacities, and the Plaintiff's claims against the Borough of Carlisle are derivative in nature.

### A. Count I- § 1983 Claim

**\*4** In Count I, Plaintiff alleges that the Defendants' conduct on June 17, 2003 constituted a violation of the Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff alleges that the Defendants used **excessive force** in their attempt to restrain him in the Sheetz parking lot.

In Graham v. Connor, 490 U.S. 386 (1989), the United States Supreme Court adopted the application of an objective reasonableness test when evaluating claims of **excessive force**. The Supreme Court noted that, "our Fourth Amendment jurisprudence has long recognized that the right to make an

A-11

arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it." *Id.* at 396. The Supreme Court instructed that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is that is necessary in a particular situation." *Id.* at 396-397.

Accordingly, when applying the objective reasonableness test, a court must first consider the specific circumstances of the case, such as "whether the suspect poses an immediate threat to safety of the officers or others." *Id.* at 396. The Supreme Court has noted that "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz,* 533 U.S. 194, 204 (2001). Moreover, the Supreme Court has observed that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396.

In this case, Plaintiff essentially argues that the **force** used by officers when detaining him and the use of the **taser** gun on his body was objectively unreasonable **excessive force**. A review of the facts in this case, as well as a review of the videotape account of the incident indicates that the Plaintiff, although acting in an unruly fashion due to his hypoglycemic attack, was resisting the police officers. It appeared to Officer Greist, upon his contact with the Plaintiff, that the Plaintiff was intoxicated.[FN2] Although it might be unfortunate that the Plaintiff was mistaken for being intoxicated while in the throes of a hypoglycemic attack, it is undeniable that he was in an altered state, and it was therefore reasonable and prudent for the Officers to detain the Plaintiff. Accordingly, it was not unreasonable for Officer Greist to request identification from the Plaintiff, nor was it unreasonable for the Officer to physically detain him when the Plaintiff attempted to leave the vicinity of his vehicle and move towards the Sheetz convenience store.

> FN2. Plaintiff does not dispute that a person experiencing a hypoglycemic attack can exhibit symptoms that are very similar to symptoms exhibited by an intoxicated person. (Rec. Doc. 15 at 6; Rec. Doc. 19 at 9).

*5 As the videotape reveals, the Plaintiff struggled against the Officers for several minutes in their attempt to restrain him, and only became subdued once he was **tasered**. We cannot, in good conscience, find that the Officers' conduct was objectively unreasonable. They were attempting to restrain a man who appeared to be intoxicated or in some state of distress, in order to protect the Plaintiff himself, as well as others and themselves. It appears that the Officers' use of **force**, including the application of the **taser** gun, was consistent with the level of the Plaintiff's resistance and there is no indication that the Officers applied any gratuitous **force** to the Plaintiff.

Accordingly, we find that the Defendant Officers did not use **excessive force** against the Plaintiff while detaining him in the Sheetz parking lot, we will enter summary judgment in favor of the Defendant Officers on Count I of the complaint. Moreover, the derivative § 1983 claim against the Borough of Carlisle fails because the Plaintiff has failed to establish a constitutional violation of the Defendant Officers. See *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite besides the point.").

### B. Counts II and III-Assault and Battery and False Imprisonment

In Counts II and III, Plaintiff asserts state law claims for Assault and Battery, and False Imprisonment, respectively, against the Defendant Officers and derivatively against the Borough of Carlisle under the doctrine of *respondeat superior.*[FN3]

A-12

> FN3. Because Plaintiff concedes that his derivative state law tort claims against the Borough of Carlisle are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Const. Stat. A. § 8541, *et seq.*, we shall not conduct a merits analysis of these claims.

Under Pennsylvania law, an assault occurs when: (1) one acts with the unprivileged intent to put another in reasonable and immediate apprehension of harmful or offensive conduct; and (2) that act does cause such apprehension. See *Proudfoot v. C.O.I. A. Williams, et al.*, 803 F.Supp. 1048, 1054 (E.D.Pa.1992) (citation omitted). To prove a battery claim, a "[p]laintiff must establish that a particular [d]efendant intended to cause a harmful or offensive contact to [p]laintiff, or an imminent apprehension of such contact in [p]laintiff, and that such contact with [p]laintiff resulted." *Lakits v. New York,* 258 F.Supp.2d 401, 407 (E.D.Pa.2003) (citations omitted).

It is well-settled Pennsylvania law that a police officer is justified when making an arrest in committing what would otherwise be an assault and/or battery, provided the force used is reasonable. See *Commonwealth v. Jayne,* 11 Pa.Super. 459 (1899). As discussed in our analysis of Plaintiff's § 1983 claim, there is no genuine issue of material fact as to whether the Defendant Officers used unreasonable force to effectuate the legitimate detention of Plaintiff. Therefore, the state-law assault and battery claims fail as a matter of law because we find that the Officers employed reasonable force against Plaintiff. Accordingly, we will enter summary judgment in favor of the Defendant Officers on Count II of the complaint.

**\*6** To establish a claim for false imprisonment under Pennsylvania law, a plaintiff must establish that (1) he was detained and (2) that the detention was unlawful. See *Valenti v. Sceeler,* 765 F.Supp. 227, 232 (E.D.Pa.1991). If a police officer has probable cause to arrest an individual, there can be no viable claim for false imprisonment against the arresting officer. See *Lomax v. Smith,* 501 F.Supp. 119, 122 (E.D.Pa.1980).

The Defendants argue that while the Plaintiff was not technically "arrested" because the Officers subsequently learned that the Plaintiff was a diabetic suffering from a hypoglycemic attack and not an intoxicated driver, they did have probable cause to believe that Plaintiff had been driving under the influence of drugs or alcohol when he was stopped and detained by Officer Greist. As aforementioned in this Memorandum and Order, the Officers' detention of the Plaintiff was entirely lawful.

Plaintiff argues that the transportation of the Plaintiff to the emergency room against his will amounted to an illegal detention and therefore the Officers falsely imprisoned him. However, Plaintiff has not demonstrated why this action by the Officers was unlawful. It is apparent that the Officers transported the Plaintiff to the hospital out of concern for his well being. To be sure, the Plaintiff's protestations do not render the Officers' actions unlawful. In fact, it was entirely reasonable for the Officers to reject the Plaintiff's objections, in light of the fact that he had just suffered from a hypoglycemic attack, and the Officers could not necessarily be assured that Plaintiff was of sound mind, despite his ingestion of sugar and water.[FN4] Accordingly, we find that the Plaintiff cannot establish a false imprisonment claim as a matter of law, and will enter summary judgment in favor of the Defendant Officers on Count III of the complaint as well.

> FN4. Moreover, had the Officers not acted in the prudent fashion that they did, and had Plaintiff been released without medical treatment and thereby caused harm to himself and possibly others while driving, something far worse than the facts set forth herein would have occurred.

### *NOW, THEREFORE, IT IS HEREBY ORDERED THAT:*

1. The Defendants' Borough of Carlisle, Sergeant Brent Griest, Officer Alan R. Mace and Officer Patrick O'Leary's Motion for Summary Judgment (doc. 15) is GRANTED.

2. The Clerk is directed to close the file on this case.

A-13

M.D.Pa.,2006.
Gruver v. Borough of Carlisle
Not Reported in F.Supp.2d, 2006 WL 1410816 (M.D.Pa.)

Motions, Pleadings and Filings (Back to top)

- 2006 WL 1441057 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion for Summary Judgment (Apr. 28, 2006) Original Image of this Document (PDF)
- 2006 WL 1441056 (Trial Motion, Memorandum and Affidavit) Plaintiff Thomas L. Gruver's Brief in Opposition to Defendants' Motion for Summary Judgment (Apr. 24, 2006) Original Image of this Document (PDF)
- 2006 WL 1021565 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants' Motion for Summary Judgement (Mar. 20, 2006) Original Image of this Document (PDF)
- 2006 WL 1021564 (Trial Motion, Memorandum and Affidavit) Brief in Support of Defendants Borough of Carlisle, Sergeant Brent Griest, Officer Alan Mace and Officer Patrick O'Leary's Motion for Summary Judgment (Mar. 15, 2006) Original Image of this Document with Appendix (PDF)
- 2006 WL 1021563 (Trial Motion, Memorandum and Affidavit) Defendants Borough of Carlisle, Sergeant Brent Griest, Officer Alan R. Mace and Officer Patrick O'Leary's Motion for Summary Judgment (Mar. 1, 2006) Original Image of this Document (PDF)
- 2005 WL 2613322 (Trial Pleading) Answer and Affirmative Defenses of Defendants Borough of Carlisle, Police Officers Brent Griest, Alan R. Mace and Patrick O'Leary to Plaintiff's Complaint (Aug. 18, 2005) Original Image of this Document (PDF)
- 2005 WL 1798504 (Trial Pleading) Complaint (Jun. 16, 2005) Original Image of this Document with Appendix (PDF)
- 4:05cv01206 (Docket) (Jun. 16, 2005)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID S. YARNALL, | ) | |
| | ) | |
| Plaintiff, | ) | CONSOLIDATED |
| | ) | |
| v. | ) | CIV. No.: 05-527-SLR |
| | ) | |
| CPL. ANTHONY MENDEZ, DELAWARE STATE POLICE - TROOP 7, PTLM LOWE, UNKNOWN OFFICERS WHO RESPONDED TO SCENE OF MILLSBORO POLICE, AND PFC BUCHERT, | ) ) ) ) ) ) | CIV. NO.: 06-501-SLR  CIV. NO.: 06-529-SLR |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

I **HEREBY CERTIFY** that on this 3rd day of May, 2007, a copy of **DEFENDANTS PTLM LOWE'S AND PFC BUCHERT'S APPENDIX TO OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was mailed first class to the following party:

David S. Yarnall
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

and was electronically filed with the Clerk of the Court using CM/ECF which will send notifications of such filing(s) to counsel listed below:

Michael W. Tupman, Esquire
Department of Justice
102 West Water Street, Third Floor
Dover, DE 19904-6750

**AKIN & HERRON, P.A.**

/s/ Bruce C. Herron
Bruce C. Herron
Attorney I.D. No.: 2315
1500 Shallcross Avenue
Suite 1-A
Wilmington, DE 19806
(302) 427-6987
Attorneys for Defendants
Ptlm Lowe and PFC Buchert

H:\tmw5\data\files\Docs\3651.038\NOS\7529.WPD